# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                      No. CR 12-3109 JB

JESUS SALAS-AGUAYO, a.k.a. "Cuyin";
ELMY HERMOSILLO TRUJILLO, a.k.a.
"Portrillo," a.k.a. "Porto," a.k.a. "9"; CARLOS
ARTURO QUINTANA, a.k.a. "Ochenta," a.k.a.
"80"; RAUL CORELLA-HERNANDEZ, a.k.a.
"Ruso," a.k.a. "El Valle," a.k.a. "Vladimir";
JORGE ADRIAN ORTEGA-GALLEGO, a.k.a.
"Naranjas"; GUADALUPE A. PRIETO; JESUS
ISAAC RODRIGUEZ-CONTRERAS;
CLAUDIO RENE ROJO-NEVAREZ; JORGE
OLIVAS NEVAREZ, a.k.a. "Compa Chuy";
ERNESTO RODRIGUEZ; GUILLERMO
CASTILLO-RUBIO, a.k.a. "Pariente";
MARCO ANTONIO GUZMAN-ZUNIGA,
a.k.a. "Brad Pitt,"

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the United States' Response to Motion to

Compel Production of Documents and Discovery or In the Alternative, Motion for a Pretrial

Conference Pursuant to 18 U.S.C. App. 3 (CIPA) Section 2, or In the Alternative, Notice of

Forthcoming CIPA Section 4 Motion, filed January 11, 2023 (Doc. 316)("CIPA Notice"); (ii) the

Government's In Camera, Ex Parte and Under Seal Motion for a Protective Order Pursuant to

Section 4 of CIPA and Fed. R. Crim. P. 16(D), filed November 20, 2023 (Doc. 394-1)("CIPA

filing"); (iii) Quintana's *Emergency* Motion to Bar Any Ex Parte Submission to the Court Pursuant

to 18 U.S.C. App. § 4 (CIPA) Without a Particularized Showing of Exceptional Circumstances,

Conducted in an Adversarial Proceeding, filed November 3, 2023 (Doc. 388)("CIPA Motion"); and (iv) Defendant Carlos Arturo Quintana's Objection to the Government's Ex Parte Submission to the Court, filed November 20, 2023 (Doc. 395)("Objection").  The Court held hearings to discuss issues regarding the CIPA process on May 18, 2023 ("CIPA Notice hearing"), Clerk's Minutes, filed May 18, 2023 (Doc. 350), and on November 21, 2023 ("CIPA hearing"), Clerk's Minutes, filed November 21, 2023 (Doc. 399).  The primary issues are: (i) whether the Court should hold, in response to the United States' request in its CIPA Notice, a pretrial conference pursuant to CIPA § 2; (ii) whether the Court may review the CIPA filing, because the Classified Information Procedures Act, 18 U.S.C. app. 3 ("CIPA"), enables the Court to review in camera ex parte filings made pursuant to CIPA § 4 without first making a determination that Plaintiff United States of America's assertion of privilege is colorable;[1] and (iii) whether the Court should order the United States to begin the process of obtaining security clearance for Defendant Carlos Arturo Quintana's counsel so that she may review the CIPA filing.  The Court concludes that: (i) the Court will conduct a conference pursuant to CIPA § 2, and the conference was held on May 18, 2023; (ii) the Court may properly review the CIPA filing under CIPA § 4 without first determining whether the United States' assertion of privilege is colorable;[2] and (iii) the Court will not order the

---

[1] Determining that the United States properly has invoked a privilege is a finding courts must make to allow the United States to delete, substitute, or summarize confidential information that must be handed over to the defendant in discovery pursuant to CIPA § 4.  See United States v. Muhtorov, 20 F.4th 558, 629 (10th Cir. 2021)(holding that courts "'should determine if the assertion of privilege by the government is at least a colorable one'" at the second stage of its "evaluation of a CIPA § 4 motion" (quoting United States v. Yunis, 867 F.2d 617, 623 (D.C. Cir. 1989))).

[2] The Court's consideration of Defendant Carlos Arturo Quintana's Motion to Dismiss Based on Violations of His Constitutional Right to a Speedy Trial, filed September 19, 2023 (Doc. 377), necessitates in part the Court's review of the United States' CIPA filing, because the United States has indicated that the CIPA filing may include information pertaining to the United States' attempts to arrest and extradite Quintana.  See Draft Transcript of November 3, 2023,

United States to begin the process of granting Quintana's counsel security clearance. Accordingly, the Court: (i) grants the United States' request in the CIPA Notice to hold a conference pursuant to CIPA § 2; (ii) denies the CIPA Motion; and (iii) overrules Quintana's Objection. The Court also proposes to hold an ex parte hearing with Quintana's counsel to learn about Quintana's theories of defense and invites Quintana to submit for the Court's in camera consideration a summary of anticipated defenses so that the Court can more accurately evaluate during its in camera review of the CIPA filing whether the materials proposed to be deleted or substituted are relevant and helpful to the defense. Finally, the Court requests the United States to indicate whether it has any objection to the Court holding an ex parte hearing with Quintana's counsel to learn about his theories of defense.

## PROCEDURAL BACKGROUND

On December 21, 2022, Quintana filed a motion to compel the United States to produce all remaining discovery, including "additional 'top secret' discovery" the United States has not made available. Defendant Carlos Arturo Quintana's Motion to Compel Production of Documents and Discovery at 2, filed December 21, 2022 (Doc. 313)("Motion to Compel")(no citation given for quotation). The United States responded that it "is currently not in a position to release classified documents in this case until the proper procedures are met," and advised that it "anticipates that issues relating to classified information could arise in connection with this case." CIPA Notice at 7. The United States, therefore, moved the Court for a pretrial conference pursuant to CIPA § 2,

---

Hearing at 120:8-13 (taken November 3, 2023)(Acee)("November Tr.")("I believe there is some classified material that will make this all very much clearer."); id. at 230:18-21 (Armijo)("I'm sure that you are aware that there is a group of discovery in this case that you have not been privy to, given the classification?"). The Court's citations to draft transcripts of the hearings refer to the court reporter's original, unedited versions. Any final transcripts may contain slightly different page and/or line numbers.

and notified "the Court and the defendant that it intends to file a sealed ex parte motion" pursuant to CIPA § 4.  CIPA Notice at 7.  Quintana responded to the CIPA Notice.  <u>See</u> Mr. Quintana's Reply to the United States' Response to His Motion to Compel Production of Documents and Discovery and Response to Motion for a Pretrial Conference Pursuant to 18 U.S.C. App. 3 (CIPA) Section 2 and Objection to Ex Parte CIPA Section 4 Motion, filed January 31, 2023 (Doc. 322)("CIPA Response").  In the CIPA Response, Quintana does not object to a pre-trial CIPA conference.  <u>See</u> CIPA Response at 1, 4.  Quintana also provided a supplement to his CIPA Response.  <u>See</u> Defendant Carlos Arturo Quintana's Supplemental Reply to the Government's Response to Defendant's Motion to Compel and the Government's Motion for a Pretrial Conference Pursuant to 18 U.S.C. App. 3 (CIPA) Section 2 or In the Alternative, Notice of Forthcoming CIPA Section 4 Motion, filed March 15, 2023 (Doc. 337)("Supplement").  In the Supplement, Quintana clarifies that he: (i) objects to the Court holding a CIPA § 2 conference until the United States provides Quintana with a summary of the evidence it seeks not to disclose, <u>see</u> Supplement at 7-8; (ii) contends that, if the Court decides to proceed with a CIPA § 2 conference, the hearing should not be a "bifurcated" conference allowing ex parte submissions, Supplement at 8-9; and (ii) argues that the Court should refuse to accept ex parte submissions from the United States absent a "particularized showing of exceptional circumstances," Supplement at 9-12.  <u>See</u> <u>id.</u> at 2 ("Secret proceedings would  constitute an abuse of discretion under CIPA § 4 and would violate Mr. Quintana's right to due  process.").

The Court held the CIPA Notice hearing on May 18, 2023.  <u>See</u> Clerk's Minutes at 1, filed May 18, 2023 (Doc. 350).  At the hearing, Quintana provided that the United States had represented that it was "trying to figure out a way to declassify" the secret discovery materials.  Draft Transcript of May 18, 2023, Hearing at 7:6-10 (taken May 18, 2023)(Johnson)("May Tr.").  Quintana argued

that "CIPA is reserved for cases involving national security . . . . [T]his is not a case that involves national security." May Tr. at 8:2-6 (Johnson). The Court asked Quintana whether it could "ever get to the point of requiring [the United States] to disclose something that they say is protected by CIPA without looking at it," and Quintana replied: "No. You would look at it." May Tr. at 11:6-10 (Court, Johnson). The Court explained that it understands that the United States was working to reduce the amount of CIPA documents that they would withhold from discovery, but that, "at some point," the United States would have to "look at the remaining documents" to determine under CIPA whether the documents could be withheld. May Tr. at 11:18-12:5 (Court). The United States informed the Court that it would be proceeding under CIPA, see May Tr. at 14:14-16 (Castellano), but that the United States was working with the Federal Bureau of Investigations ("FBI") to declassify as much discovery as possible, see May Tr. at 15:8-16:25 (Court, Castellano). The Court ordered the agencies completing the determination whether discovery should be classified to turn over all classified and unclassified material to the United States Attorney's Office within twenty-eight days. See May Tr. at 26:24-27:7 (Court).

On July 29, 2023, Quintana filed a motion to dismiss the indictment or, in the alternative, to exclude the evidence that the United States had failed to disclose, in which Quintana indicated that the United States Department of Justice ("USDOJ") had advised the United States that it would be declassifying "discovery that it had previously represented was classified," but could not "provide the defense with a timetable for completion of declassification and disclosure." Quintana's Motion to Dismiss Indictment or In the Alternative to Exclude Witnesses/Evidence for Failure to Disclose Discovery at 2-3, filed July 29, 2023 (Doc. 356)("First MTD"). On August 14, 2023, the United States responded and acknowledged that

> there are documents that are classified related to this case. The prosecution has requested that the FBI review the materials and "declassify" the materials if

possible.  The FBI is currently going through the review process to determine if they are able to do so.

United States' Response to Carlos Quintana's Motion to Dismiss Indictment or In the Alternative to Exclude Witnesses/Evidence for Failure to Disclose Discovery, filed August 14, 2023 (Doc. 363).

The Court held a hearing on the First MTD on September 12, 2023, see Clerk's Minutes at 1, filed September 12, 2023 (Doc. 378), where Quintana requested that the Court give the United States a deadline to declassify the documents that the United States will declassify and, regarding the secret documents, to require the United States to file "a claim signed and attested to by the agency head who is claiming that the documents or the evidence is subject to CIPA."   Draft Transcript of September 12, 2023, Hearing at 11:5-18 (taken September 12, 2023)(Johnson)("September Tr."). The Court explained that it was "disappointed" that the agency completing the confidentiality review had missed the deadline which the Court set at the May 18, 2023, hearing to inform the United States Attorney's Office which documents could be declassified.  September Tr. at 14:10-15:8 (Court, Castellano).  The United States responded that the agency completing the review had a "draft declaration" prepared and would be circulating it to the other agencies who needed to sign off on the declassification of certain materials.  September Tr. at 15:9-25 (Castellano).   The United States explained that it "understood the Court's frustration," but stated that it had to wait for the stakeholder agencies' approval before it could proceed with the CIPA process.  September Tr. at 17:8-22 (Castellano).

At a hearing on November 3, 2023, the United States indicated that declassification process remained ongoing.  See Draft Transcript of November 3, 2023, Hearing at 293:16-294:4 (taken November 3, 2023)(Court, Castellano)("November Tr.").  The United States explained that the agencies completing the review were planning to "move for substitution of some material in the

documents" pursuant to CIPA, and the United States requested a month to provide the Court with "something to review." November Tr. at 295:2-25 (Court, Castellano). Quintana argued that the United States missed multiple deadlines related to the CIPA process and requested that the Court give the United States a week to provide the information. See November Tr. at 297:9-16 (Johnson). The Court gave the United States a deadline of November 20, 2023, to provide the Court with the submission, and explained that, if the documents were not provided by the deadline, the United States would be unable to proceed under CIPA. See November Tr. at 298:9-299:1 (Court).

On November 3, 2023, after the hearing, Quintana filed the CIPA Motion. See CIPA Motion at 1. In the CIPA Motion, Quintana explained that, at the hearing earlier that day, the United States "announced that it would be submitting discovery to the Court, ex parte, pursuant to the Classified Information Procedures Act (CIPA) to request 'substitutions.'" CIPA Motion at 2. Quintana argued that the Court should accept the United States' ex parte submission under CIPA § 4 only if the United States makes a "particularized showing of exceptional circumstances." CIPA Motion at 2. Quintana further argued that, in the alternative, his attorney should be provided with the appropriate security clearance and should be allowed to review the United States' disclosures. See CIPA Motion at 3, 9. Quintana subsequently filed Defendant Carlos Arturo Quintana's Supplemental Memorandum in Support of Defendant's Motion to Bar Any Ex Parte Submission to the Court Pursuant to 18 U.S.C. App. 4 (CIPA), filed November 19, 2023 (Doc. 393)("CIPA Supplement"). In the CIPA Supplement, Quintana clarifies that it would be improper for the Court to review the United States' ex parte filing before "determining whether the government's invocation of the state secrets privilege is proper." CIPA Supplement at 2. Quintana reiterates that, "if the state secrets privilege is properly invoked and declassification is

not possible," the Court should order the United States to begin the clearance process for Quintana's attorney before proceeding under CIPA.  CIPA Supplement at 5.

On November 20, 2023, the deadline that the Court set at the November 3, 2023, hearing for the United States to file its ex parte submission pursuant to CIPA, the United States delivered a classified submission to the Court.  See Government's Notice of Classified Filing, filed November 20, 2023 (Doc. 394).  Upon receipt, the Court immediately placed the submission into a secure storage location.  See Draft Transcript of November 21, 2023, Hearing at 23:12-24 (taken November 21, 2023)(Court)("CIPA Tr.").  The Court did not at that time review the submission. See CIPA Tr. at 24:2-3 (Court).  Also on November 20, 2023, Quintana filed the Notice, in which he requested the Court reject the ex parte filing, because the United States' submission "is highly unusual," Notice at 3, and because the "procedural mandates of CIPA have not been complied with," Notice at 2.

At the CIPA hearing, the Court began by explaining that it had received the documents but that it had not reviewed them.  See CIPA Tr. at 23:12-24:3 (Court).  The Court then explained that, upon initial review of the CIPA Motion and Notice, it believed it would be proper under CIPA to review the United States CIPA filing, because it believes that there is no requirement that the assessment of the United States' privilege claim take place before review of the CIPA filing.  See CIPA Tr. at 24:12-28:2 (Court).  Quintana requested that the Court review Executive Order No. 13526, 75 Fed. Reg. 707 (January 5, 2010)("EO 13526"), which he explained evinces a "shift towards open government" and declassification.  CIPA Tr. at 29:4-30:2 (Johnson).  Accordingly, Quintana requested the Court to "order the Government to submit the materials for a classification review," and, if the review found materials need to remain classified, to "follow the procedures of CIPA, and allow defense counsel to undergo the security clearance."  CIPA Tr. at 30:6-31:7

(Johnson).  Quintana noted that the procedures which the United States is following are irregular, because they are attempting to use CIPA to "substitute their [own] evidence."  CIPA Tr. at 31:8-32:4 (Johnson).  Finally, Quintana acknowledged that "the Court can review CIPA Section 4 submissions ex parte," but reiterated that "the defense [should] be allowed in this case at a minimum to be able to access and review to classified material because CIPA allows for that."  CIPA Tr. at 32:8-12 (Johnson).

The United States responded that the agencies undertaking the classification review already had complied with EO 13526.  See CIPA Tr. at 35:4-15 (Court, Castellano).  The United States explained that, to receive clearance, Quintana's counsel would require a "need to know," and the United States indicated that it is unlikely Quintana's counsel will receive such authorization.  CIPA Tr. at 36:8-15 (Castellano).  The United States argued that Quintana already had acknowledged that the Court's review of the CIPA filing would be proper,  see CIPA Tr. at 35:16-24 (Castellano)("[C]learly it is permissible to have the ex parte showing first and the court to take action after that."), and requested that the Court proceed with the review of the CIPA filing, see CIPA Tr. at 36:17-20 ("The Court has the accompanying documents that come with the submission. We would ask the court to follow that process, the process that is currently in place.").

The Court indicated that it believes that it is authorized to conduct an ex parte review of the CIPA filing and needs to conduct such a review in response to the United States' request, but explained the Court's review does not preclude Quintana's counsel from obtaining security clearance and requesting review in the future.  See CIPA Tr. at 38:15-22 (Court).  Quintana responded that the Court must "order the Government to begin th[e] process [of obtaining security clearance for Quintana's counsel].  Because that's how CIPA works."  CIPA Tr. at 38:23-39:9 (Johnson).  See id. at 40:21-25 (Johnson)("CIPA contemplates it. And that's part of the procedural

process that CIPA requires.  If the Government is going to invoke CIPA, defense counsel has to

get a clearance.").  The United States argued that it did not believe "CIPA requires defense counsel

to be cleared; otherwise, there wouldn't be a specific mention of substitutions and summaries in

CIPA Section 4. That's just not correct."  CIPA Tr. at 42:20-24 (Castellano).  The Court did not

order the United States to begin Quintana's counsel's security clearance, but ordered the United

States to "find out . . . if the Government's position is that [the request for security clearance is]

denied."  CIPA Tr. at  40:6-14 (Court).

## LAW REGARDING CIPA § 4

CIPA governs "the use or potential use of classified information in federal criminal

proceedings" by establishing "'procedures to harmonize a defendant's right to obtain and present

exculpatory material upon his trial and the government's right to protect classified material in the

national interest.'"  United States v. Muhtorov, 20 F.4th 558, 628 (10th Cir. 2021)(quoting United

States v. Abu-Jihaad, 630 F.3d 102, 140 (2d Cir. 2010), cert. denied, 143 S. Ct. 246 (2022)).  CIPA

"provides guidance to trial judges applying [rule 16(d)] where confidential information is

involved," and "clarifies district courts' power under [rule 16(d)] to issue protective orders denying

or restricting discovery for good cause."  United States v. Muhtorov, 20 F.4th at 628 (citing United

States v. Lustyik, 833 F.3d 1263, 1271 (10th Cir. 2016)).  CIPA's plain terms "evince Congress's

intent to protect classified information from unnecessary disclosure at any stage of a criminal trial"

while simultaneously ensuring that a defendant's right to present evidence in his defense in not

compromised.  United States v. Apperson, 441 F.3d 1162, 1193 n.8 (10th Cir. 2006).

CIPA § 4 governs defendants' pretrial discovery of classified information.  Specifically,

§ 4 permits district courts to, "upon a sufficient showing, [] authorize the United States": (i) "to

delete specified items of classified information from documents to be made available to the

defendant through discovery under the Federal Rules of Criminal Procedure"; (ii) "to substitute a summary of the information for such classified documents"; or (iii) "to substitute a statement admitting relevant facts that the classified information would tend to prove."  18 U.S.C. app. 3 § 4. The court "may permit the United States to make a request for such authorization in the form of a written statement to be inspected by the court alone."  18 U.S.C. app. 3 § 4.  In considering a CIPA § 4 motion,

> The district court first must ensure that the information the government seeks to protect "crosse[s] the low hurdle of relevance." [United States v. ]Yunis, 867 F.2d [617,] 623 [(D.C. Cir. 1989)].  Second, the court "should determine if the assertion of privilege by the government is at least a colorable one," thus preventing the government from "convert[ing] any run-of-the-mine criminal case into a CIPA action merely by frivolous claims of privilege." *Id.*  Third, the district court must determine if the evidence is "material[ ]," meaning "helpful to the defense of an accused." *Id.* at 622 (quoting Roviaro[ v. United States], 353 U.S.[ 53], 60-61 [(1957)]).

United States v. Muhtorov, 20 F.4th at 628.

## ANALYSIS

The United States requests a CIPA § 2 conference to consider issues that may result due to the classified material in this case.  See CIPA Notice at 7.  Quintana argues that the Court may not consider the United States' CIPA § 4 submission without first assessing whether the United States presents a colorable claim of privilege.  See CIPA Motion at 1; CIPA Supplement at 2-4.  In the CIPA Supplement and at the CIPA hearing, Quintana further requests that the Court order the United States to begin the process of seeking security clearance for Quintana's counsel so that she may review the CIPA filing.  See CIPA Supplement at 5-6.  The Court concludes that: (i) the Court will conduct a conference pursuant to CIPA § 2, and the conference was held on May 18, 2023; (ii) the Court may properly review the United States' CIPA § 4 submission without first making a determination whether the United States presents a colorable claim of privilege, because the assessment of the United States' privilege claim takes place during the Courts' review of the

United States' ex parte in camera CIPA § 4 submission and not before the submission of the United States' CIPA § 4 request; and (iii) the Court will not order the United States to begin the process of seeking secret-level security clearance for Quintana's counsel, because CIPA § 4 precludes defense counsel's participation in the CIPA § 4 ex parte process.  Accordingly, the Court: (i) grants the United States' request in the CIPA Notice to hold a conference pursuant to CIPA § 2; (ii) denies the CIPA Motion; and (iii) overrules Quintana's Objection.

## I.     <u>THE COURT WILL CONDUCT A CIPA § 2 CONFERENCE.</u>

In the CIPA Notice, the United States moves the Court "for a pretrial conference to consider such matters pursuant to Section 2 of CIPA" and "issues relating to classified information [that] could arise in connection with this case."  CIPA Notice at 7.  Quintana does not object to the Court holding a CIPA § 2 conference, <u>see</u> CIPA Response at 1, 4, but requests that, if the Court decides to hold a CIPA § 2 conference, the Court should order the United States to provide Quintana with a summary of the evidence it seeks not to disclose, <u>see</u> CIPA Supplement at 7-8.  CIPA § 2 provides that "any party may move for a pretrial conference to consider matters relating to classified information that may arise in connection with the prosecution."  18 U.S.C. app. 3 § 2.  Following a request pursuant to CIPA § 2, "the court shall promptly hold a pretrial conference to establish the timing of requests for discovery, the provision of notice required by section 5 of this Act, and the initiation of the procedure established by section 6 of this Act."  18 U.S.C. app. 3 § 2.  At the conference, the court also may "consider any matters which relate to classified information or which may promote a fair and expeditious trial."  18 U.S.C. app. 3 § 2.

Here, the CIPA Notice hearing was a CIPA § 2 conference, and it is unnecessary to hold an additional CIPA § 2 conference at this time.  <u>See</u> <u>United States v. Dumeisi</u>, 424 F.3d 566, 578 (7th Cir. 2005)(holding that the district court "did not violate Dumeisi's constitutional rights"

where the district court "found it unnecessary to conduct [a CIPA § 2] conference, given that the procedures were already underway").  At the CIPA Notice hearing, the parties and the Court discussed the CIPA process, examined the government's reasons for invoking CIPA's procedures, and set deadlines for the United States' compliance with CIPA.  First, the Court queried the United States in detail "about the volume of classified materials," United States v. Brown, No. 5:14-CR-58, 2014 WL 1572553, at *5 (E.D.N.C. April 18, 2014)(Flanagan, J.), and the United States indicated that "the universe itself is somewhat small," May Tr. at 17-15:4 (Court, Castellano).  Second, the Court questioned the United States about the "possibility of declassification," United States v. Brown, 2014 WL 1572553, at *5, and the United States represented that it had "started the process of attempting to declassify" the secret discovery materials, May Tr. at 15:12-15 (Castellano).  Third, the Court "inquire[d] into when various agency approvals are anticipated and how soon the material may be able to be turned over to the defense."  United States v. Brown, 2014 WL 1572553, at *5.  See May Tr. at 15:16-16:25 (Court, Castellano).  Fourth, the Court "preview[ed] issues bearing on the timeliness and format of [the United States'] presentation of CIPA § 4 materials."  United States v. Brown, 2014 WL 1572553, at *4.  See May Tr. at 17:14-18 (Castellano)("[U]nder CIPA section 4, there could be redactions, there could be summaries substance suited, or statements of relevant fact that could be substituted if we can't otherwise provide the documents . . . .").  Fifth, the Court set the initial schedule for the CIPA process by ordering the agencies completing the declassification review to complete their review within twenty-eight days, see May Tr. at 26:24-27:7 (Court), and then subsequently reevaluated the CIPA timeline when the United States missed the Court's deadlines at both the September 12, 2023, hearing and November 3, 2021, hearing, see United States v. Brown, 2014 WL 1572553, at *5 ("Regular evaluations of the case schedule due to discovery issues often become necessary in these

types of cases[, because i]t is difficult for the government to predict when it will be able to complete various discovery disclosures.").[3]

Collectively, these actions -- establishing a schedule for the United States' compliance with CIPA and inquiring into the United States' invocation of the CIPA process -- constitute a CIPA § 2 conference.  Holding an additional conference at this stage of the case, where the CIPA procedures are "already underway," is "unnecessary," unless the parties wish to hold an additional conference.  United States v. Dumeisi, 424 F.3d at 578.  Accordingly, the Court grants the United States' request for a CIPA § 2 conference, and the conference was held on May 18, 2023. Moreover, the Court stands prepared to hold a CIPA § 2 conference in the future.

## II.  CIPA AUTHORIZES THE COURT TO REVIEW THE UNITED STATES' EX PARTE CIPA FILING IN CAMERA WITHOUT MAKING A PRIOR DETERMINATION THAT THE UNITED STATES CLAIM OF PRIVILEGE IS COLORABLE.

Quintana conceded at the CIPA hearing that "the Court can review CIPA Section 4 submissions ex parte."  CIPA Tr. at 32:8-9 (Johnson).  Nevertheless, the Court will address briefly the argument that CIPA prevents the Court from reviewing the CIPA filing before making a determination that the United States' privilege claim is colorable, because this argument is the primary one in Quintana's CIPA Motion, CIPA Supplement, and Objection, and because Quintana cites the Court's accepting the CIPA filing "without regard to CIPA's procedural mandates" as a basis for moving for the Court's recusal.  Defendant Carlos Arturo Quintana's Motion for Recusal

---

[3]CIPA § 2 provides that no admission which the defendant, or his or her attorney, makes at the pretrial conference may be used against the defendant unless both the defendant, and his or attorney, sign the written admission.  See 18 U.S.C. App. III § 2.  Because the portion of the CIPA Notice hearing, during which the Court and the parties discussed CIPA and established a schedule for compliance with the statute, was a CIPA § 2 hearing, the Court recognizes that no admission that Quintana or Quintana's attorney made during this portion of the CIPA Notice hearing will be used against Quintana.

of the Honorable James O. Browning ¶¶ 6-9, at 2, filed November 20, 2023 (Doc. 396).  CIPA §

4 permits the government to ask the district court for permission

> to delete specified items of classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure, to substitute a summary of the information for such classified documents, or to substitute a statement admitting relevant facts that the classified information would tend to prove.

18 U.S.C. app. 3 § 4.  See United States v. Muhtorov, 20 F.4th at 628.  The court "may permit the

United States to make a request for such authorization in the form of a written statement to be

inspected by the court alone."  18 U.S.C. app. 3 § 4.

Here, by way of the CIPA filing, the United States has made a request for authorization to

substitute "specified items of classified items."  18 U.S.C. app. 3 § 4.  CIPA's plain language

provides that the Court may now inspect the United States' request "alone," 18 U.S.C. app. 3 § 4,

to determine: (i) whether the material the United States seeks to withhold is relevant; (ii) whether

the United States' invocation of the state secrets privilege is colorable; and (iii) whether the

material is helpful to Quintana, see United States v. Muhtorov, 20 F.4th at 629; United States v.

Abu Ali, 528 F.3d 210, 253 (4th Cir. 2008)("CIPA expressly provides for such redactions of

classified information from documents sought or required to be produced to the defendant, and the

determination may be based upon an ex parte showing that the disclosure would jeopardize

national security interests.").  The conclusion that the Court may review the ex parte CIPA filing

in camera is further confirmed by Federal Rule of Criminal Procedure 16(d)(1), which states that

"[a]t any time, the court may, for good cause, deny, restrict, or defer discovery or inspection, or

grant other appropriate relief," as well as "permit a party to show good cause by a written statement

that the court will inspect ex parte."  Fed. R. Crim. P. 16(d)(1).  See Rule 16 Adv. Comm. Notes,

Sub. (e) (1966)(recognizing that "among the considerations" in a Rule 16(d)(1) motion is "the

protection of information vital to the national security."). Numerous other courts have consistently found that ex parte, in camera consideration of CIPA § 4 motions is proper at this stage. See, e.g., United States v. Sedaghaty, 728 F.3d 885, at 909 ("'[E]x parte hearings are generally disfavored,' but . . . '[i]n a case involving classified documents, however, ex parte, in camera hearings in which government counsel participates to the exclusion of defense counsel are [appropriate]. . . .'" (quoting United States v. Klimavicius-Viloria, 144 F.3d 1249 (9th Cir. 1998)); United States v. Hanna, 661 F.3d 271, 294 (6th Cir. 2011)("Hanna asserts that the district court abused its discretion when it considered the government's filings ex parte and in camera. This claim is without merit."); United States v. Pringle, 751 F.2d 419, 427-28 (1st Cir. 1984)("We rule that the government correctly followed the pertinent sections of CIPA in this case and the court's ex parte in camera inspection of the documents was authorized under § 4 of CIPA and Federal Rule of Criminal Procedure 16(d)(1)."); United States v. Abu-Jihaad, 630 F.3d 102, 143 (2d Cir. 2010)(listing cases).

Regarding Quintana's specific argument that the court must make a preliminary finding that the United States' claim of privilege is colorable before reviewing the CIPA filing, see Motion at 3, the "clear language of [CIPA] and its legislative history foreclose [the contention that] . . . the government must file a public claim of privilege before making an ex parte in camera submission," United States v. Sarkissian, 841 F.2d 959, 965-66 (9th Cir. 1988). See id. at 965 ("Nowhere does CIPA require the government to file a public claim of privilege before making an in camera ex parte submission."). Instead, the United States' formal assertion of state secret privilege is made in its CIPA § 4 submission and the court's subsequent evaluation of the claim occurs during the court's ex parte in camera review of the submission. In United States v. Yunis, 867 F.2d 617 (D.C. Cir. 1989), which the United States Court of Appeals for the Tenth Circuit has cited as providing

"the standard governing a district court's evaluation of a CIPA § 4 motion," <u>United States v.</u> <u>Muhtorov</u>, 20 F.4th at 629, the United States Court of Appeals for the District of Columbia Circuit clarified that the consideration whether the United States' claim of privilege is "colorable" takes place during the district court's in camera review of the classified information the United States seeks to withhold or substitute in its CIPA § 4 motion, not as a prerequisite for filing and consideration of the CIPA § 4 motion.  867 F.2d at 623 (recognizing that the district court properly "review[ed] the [government's ex parte in camera pleadings] for the purpose of establishing the facial validity of the government's claim of privilege . . . ").  <u>See</u> <u>United States v. Muhanad</u> <u>Mahmoud Al-Farekh</u>, 956 F.3d 99, 107 (2d Cir. 2020)("[T]here can be no question that a district court's ex parte, in camera adjudication of CIPA motions falls squarely within the authority granted by Congress.").  Consequentially, the Court concludes that CIPA expressly contemplates the Court's review of the CIPA filing at this juncture, <u>i.e.</u>, prior to a showing that the United States' state secrets privilege assertion is colorable.[4]

---

[4]In the CIPA Supplement, Quintana also argues that the United States' invocation of CIPA § 4 is inappropriate, because "section 4 does not contemplate the government to submit substitutions for its own evidence."  CIPA Supplement at 8.  Rather, "Section 4 proposed redactions apply to defense sought classified evidence."  CIPA Supplement at 8.  In the United States' CIPA Notice, the United States provides "notice that it may make a sealed ex parte submission to the Court under Section 4 of CIPA with a request for a pretrial ruling with respect to classified information."  CIPA Notice at 1-2.  According to the United States, the CIPA Notice was filed in response to Quintana's request for discovery of classified information.  <u>See</u> CIPA Notice at 1.

As Quintana notes, CIPA provides only the mechanism by which courts may "issue protective orders denying or restricting discovery for good cause."  <u>United States v. Muhtorov</u>, 20 F.4th at 628.  Accordingly, to the extent that Quintana is no longer seeking discovery of the classified information in the United States' possession, Quintana is correct that the procedures CIPA provides are rendered unnecessary.  To date, however, Quintana has not indicated that he no longer seeks discovery of information the United States has indicated is classified.  <u>See</u> Motion to Compel Production of Documents and Discovery at 2, filed December 21, 2022 (Doc. 313)("Undersigned counsel requested the production of all discovery in this case. . . . The government indicated that there was additional 'top secret' discovery, but has not made this discovery available." (no citation given for quotation)).

III.   **THE COURT WILL NOT ORDER THE UNITED STATES TO BEGIN THE PROCESS OF PROVIDING QUINTANA'S COUNSEL WITH SECRET-LEVEL SECURITY CLEARANCE SO THAT QUINTANA'S COUNSEL MAY REVIEW THE CIPA FILING.**

Quintana argues that CIPA requires the Court to order the United States to provide his counsel with security clearance so that his counsel may review the materials the United States alleges are classified.  See CIPA Supplement at 5-6; CIPA Tr. at 40:21-25 (Johnson)("CIPA contemplates it.  And that's part of the procedural process that CIPA requires.  If the Government is going to invoke CIPA, defense counsel has to get a clearance.").  As an initial matter, CIPA § 4 does not contemplate defense counsel's receiving security clearance so that he or she may review the United States' ex parte filing.  Although available decisions do not address whether defense counsel who presently lacks security clearance can be provided such clearance upon court order to review CIPA material, federal courts have rejected the proposition that even counsel who already possess clearance cannot be bypass the ex parte court review and be provided access.   In United States v. Muhanad Mahmoud Al-Farekh, 956 F.3d 99, the United States Court of Appeals for the Second Circuit declined to adopt a bright line rule that, "where a defense counsel has an appropriate security clearance, the District Court may not adjudicate the CIPA motions ex parte and must give defense counsel access to the classified information."  956 F.3d at 107.  The Second Circuit recognized that "[n]othing in the text of § 4 limits the District Court's authority to review classified information ex parte only where defense counsel lacks a security clearance," and "to the contrary," a rule requiring that defense counsel be allowed to review CIPA § 4 filings "cannot be reconciled with CIPA as enacted by Congress . . . ."  United States v. Muhanad Mahmoud Al-Farekh, 956 F.3d at 107.  Similarly, in United States v. Campa, 529 F.3d 980 (11th Cir. 2008), the United States Court of Appeals for the Eleventh Circuit reasoned that "[t]he right that section four confers on the government would be illusory if defense counsel were allowed to participate in

section four proceedings because defense counsel would be able to see the information that the government asks the district court to keep from defense counsel's view."  529 F.3d at 995.  The Honorable Valerie Caproni, United States District Judge for the United States District Court for the District of Southern New York, has come to the same conclusion:

> [I]n Defendant's view, his cleared counsel must be able to review the CIPA-protected material to ensure that the Government followed all necessary procedures pursuant to FISA and similar statutes. This exact argument is foreclosed by CIPA itself and has been rejected repeatedly by the Second Circuit and other courts to consider the issue. Section 4 of CIPA expressly provides for ex parte review by the district court, as does Rule 16(d)(1). *See* 18 U.S.C. app. 3 § 4 ("The court may permit the United States to make a request for such authorization in the form of a written statement to be inspected by the court alone.") . . . .

United States v. Liu, No. 19 CR. 804, 2021 WL 3374535, at *4 (S.D.N.Y. Aug. 3, 2021)(Caproni, J.).  See H.R. REP. NO. 96-831, pt. 1, at 27 n.22 (1980)("[S]ince the government is seeking to withhold classified information from the defendant, an adversary hearing with defense knowledge would defeat the very purpose of the discovery rules.").

Moreover, even if Quintana's counsel received secret-level security clearance, she would not automatically be entitled to review the CIPA filing.  "Persons with an appropriate security clearance still may not have access to classified information if they do not have a 'need to know' that information," and "defense counsel does not 'need to know' classified information that is neither helpful nor material to the defense of his or her client."  United States v. Muhanad Mahmoud Al-Farekh, 956 F.3d at 109 n.19 (quoting Exec. Order No. 13526, §§ 4.1(a), 6.1(dd), 75 Fed. Reg. 707, 720, 728-29 (Dec. 29, 2009)).  See United States v. Sedaghaty, 728 F.3d at 909 ("[T]he simple fact that defense counsel held security clearances does not mean that the attorneys were entitled to access the government's classified filings."); United States v. Liu, No. 19 CR. 804, 2021 WL 3374535, at *4 ("That defense counsel holds a security clearance has no bearing on whether a district court may conduct its review ex parte and in camera pursuant to Section 4 of

CIPA."). As federal courts have been unwilling to allow defense counsel already in possession of security clearance to bypass the court's ex parte review of CIPA documents, the Court is here unwilling to take the more drastic action of ordering that Quintana's counsel receive security clearance to review documents before the Court has conducted its ex parte review of those documents. If the Court determines during its ex parte in camera review of the CIPA filing that classified material is helpful to the defense, the Court may schedule a hearing pursuant to CIPA § 2 to reconsider whether Quintana's counsel should undergo a background check to be granted security clearance. See United States v. Amawi, 695 F.3d at 473 ("The possession of a security clearance only becomes relevant after the district court determines, in accordance with section 4, that any classified information is discoverable.").[5]

---

[5]Quintana argues that the Court's consideration of the CIPA filing "would also result in a violation of Mr. Quintana's right to Due Process." Motion at 2. It is well established, however, that ex parte motions and hearings do not violate a defendant's rights under the Fifth and Sixth Amendments to the Constitution of the United States. See In re Terrorist Bombings of U.S. Embassies in E. Afr., 552 F.3d 93, 128-31 (2d Cir. 2008)(holding that defendant's Fifth and Sixth Amendment rights to present defense were not violated by district court's order, under CIPA, permitting only individuals with security clearances to view classified information). In United States v. Jolliff, 548 F. Supp. 229 (D. Md. 1981), the Honorable Edward S. Northrop, then-Chief United States District Judge for the United States District Court for the District of Maryland, rejected a constitutional challenge to CIPA § 4's ex parte provisions. 548 F. Supp. At 231-32. Judge Northrup reasoned that

> The Supreme Court has repeatedly upheld the use of ex parte, in camera examinations prior to disclosure. See Goldberg v. United States, 425 U.S. 94, 109, 96 S.Ct. 1338, 1347, 47 L.Ed.2d 603 (1976) (disclosure of Jencks [v. United States, 353 U.S. 657 (1957)] material); United States v. Nixon, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974) (disclosure of material allegedly containing confidential Presidential communications); Dennis v. United States, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966) (disclosure of grand jury minutes subject to an in camera deletion of "extraneous material"); Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957) (disclosure of informant's identity).

United States v. Jolliff, 548 F. Supp. at 232. Judge Northrup concluded that "use of in camera proceedings are particularly appropriate prior to the disclosure of classified information," and, accordingly, held that there were "no constitutional problems with the use of an in camera

Notwithstanding the Court's authority to view the CIPA filing without Quintana's input, the Court proposes to hold an ex parte hearing with Quintana's counsel to learn about Quintana's theories of defense such that the Court will be better equipped to determine whether any information the United States seeks to withhold or substitute is helpful for Quintana's defense. See United States v. Muhanad Mahmoud Al-Farekh, 956 F.3d at 109 ("[T]he District Court met ex parte with defense counsel so that counsel could present Al-Farekh's theory of the case and his potential defenses."); United States v. Amawi, No. 3:06CR719, 2009 WL 961143, at *1 (N.D. Ohio Apr. 7, 2009)(Carr, J.)("To assist my review and consideration of classified material during my ex parte sessions with government counsel, I met, at their request, ex parte with defense counsel.  The purpose of those meetings was to inform me about aspects of the defendants' theory of the case that otherwise I would not have known.").  In addition, Quintana is "invited to submit for the court's in camera consideration a summary of anticipated defenses so that the court can more accurately evaluate whether the materials proposed to be deleted are in fact 'relevant and helpful' to the defense."  United States v. Brown, 2014 WL 1572553, at *5.  The United States promptly needs to inform the Court whether the United States has any opposition to the Court holding an ex parte hearing with Quintana and his counsel to receive this information.

**IT IS ORDERED** that: (i) the United States' request for a CIPA § 2 conference in the United States' Response to Motion to Compel Production of Documents and Discovery or In the Alternative, Motion for a Pretrial Conference Pursuant to 18 U.S.C. App. 3 (CIPA) Section 2, or In the Alternative, Notice of Forthcoming CIPA Section 4 Motion, filed January 11, 2023 (Doc.

---

examination in this case."  United States v. Jolliff, 548 F. Supp. at 232.  For these reasons, the Court concludes that the use of CIPA § 4 procedures in this case do not violate Quintana's constitutional rights.

316), is granted; (ii) Defendant Carlos Arturo Quintana's *Emergency* Motion to Bar Any Ex Parte

Submission to the Court Pursuant to 18 U.S.C. App. § 4 (CIPA) Without a Particularized Showing

of Exceptional Circumstances, Conducted in an Adversarial Proceeding, filed November 3, 2023

(Doc. 388), is denied; and (iii) Defendant Carlos Arturo Quintana's Objection to the Government's

Ex Parte Submission to the Court, filed November 20, 2023 (Doc. 395), is overruled.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Alexander M.M. Uballez
   United States Attorney
Maria Y. Armijo
Randy M. Castellano
Ryan Ellison
   Assistant United States Attorneys
United States Attorney's Office
Las Cruces, New Mexico

   *Attorneys for the Plaintiff*

Erlinda O. Johnson
Adrian Gandara
Law Office of Erlinda Ocampo Johnson, LLC
Albuquerque, New Mexico

   *Attorneys for Defendant Carlos Arturo Quintana*

Liane E. Kerr
Albuquerque, New Mexico

   *Attorneys for Defendant Jesus Isaac Rodriguez-Contreras*

Donald Kochersberger
Business Law Southwest LLC
Albuquerque, New Mexico

*Attorneys for Defendant Claudio Rene Rojo-Nevarez*

Brian A. Pori
Albuquerque, New Mexico

*Attorneys for Defendant Ernesto Rodriguez*

Gregory M. Acton
Acton Law Office, PC
Albuquerque, New Mexico

*Attorneys for Defendant Guillermo Castillo-Rubio*