# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                                 No. CR 12-3109 JB

JESUS SALAS-AGUAYO, a.k.a. "Chuyin";
ELMY HERMOSILLO TRUJILLO, a.k.a.
"Portrillo," a.k.a. "Porto," a.k.a. "9"; CARLOS
ARTURO QUINTANA, a.k.a. "Ochenta," a.k.a.
"80"; RAUL CORELLA-HERNANDEZ, a.k.a.
"Ruso," a.k.a. "El Valle," a.k.a. "Vladimir";
JORGE ADRIAN ORTEGA-GALLEGO, a.k.a.
"Naranjas"; GUADALUPE A. PRIETO; JESUS
ISAAC RODRIGUEZ-CONTRERAS;
CLAUDIO RENE ROJO-NEVAREZ; JORGE
OLIVAS NEVAREZ, a.k.a. "Compa Chuy";
ERNESTO RODRIGUEZ; GUILLERMO
CASTILLO-RUBIO, a.k.a. "Pariente";
MARCO ANTONIO GUZMAN-ZUNIGA,
a.k.a. "Brad Pitt,"

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Carlos Arturo Quintana's Objections to the Government's Proposed Co-Conspirator Statements, filed August 29, 2023 (Doc. 368)("Objections"). Pursuant to United States v. James, 590 F.2d 575 (5th Cir. 1979)("James"), the Court held hearings on October 5, 2023, see Clerk's Minutes, filed October 5, 2023 (Doc. 385), and November 3, 2023, see Clerk's Minutes, filed November 3, 2023 (Doc. 398)(together, the "James hearings"). The primary issue is whether the Court should admit sixteen co-conspirator statements under rule 801(d)(2)(E) of the Federal Rules of Evidence. The Court

concludes that all the offered statements are admissible under either rule 801(d)(2)(E), a different hearsay exception, or because they are not hearsay.  The Court, therefore, overrules the Objections.

## FINDINGS OF FACT

The Federal Rules of Criminal Procedure require the Court to state "its essential findings on the record" when "factual issues are involved in deciding a motion."  Fed. R. Crim. P. 12(d).  The Court makes these findings by a preponderance of the evidence and only to determine preliminary questions regarding whether evidence is admissible.  See Fed. R. Evid. 104(a).  In deciding such preliminary questions, the other rules of evidence, except those with respect to privileges, do not bind the Court.  See Fed. R. Evid. 104(a)("The court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible.  In so doing, the court is not bound by evidence rules, except those on privilege.").  The Court bases these conclusions on the Third Superseding Indictment, filed July 23, 2015 (Doc. 145)("Indictment"), as well as on the testimony it heard at the James hearings and evidence the Court admitted at the hearings, including the Federal Bureau of Investigation Report, filed October 5, 2023 (Doc. 385-1)("FBI Report"), and the Affidavit in Support of Extradition (dated July 2, 2018), admitted into evidence on November 3, 2023, as United States' Exhibit 4 ("Acee Aff."); November Tr. at 81:10 (Court)(admitting into evidence the Acee Aff.).  The Court makes the following findings of fact:

### 1.     The Vicente Carrillo Fuentes Organization ("VCFO").

1.     Members of the VCFO, which is also known as the Juarez Cartel, disseminate a large quantity of marijuana from Mexico into the United States.  Indictment ¶ 1, at 1-2; FBI Report at 2-3; Acee Aff. ¶ 7, at 2-3.

2.      The VCFO, which traditionally has controlled and operated from the Mexican state of Chihuahua, is responsible for shipping multi-ton loads of marijuana throughout the United States each year.  See Indictment ¶ 4, at 3.

3.      Much of the VCFO's success is owed to its close ties with "corrupt state and local police commanders, politicians, and military leaders."  Indictment ¶ 5, at 3.

4.      The "day-to-day leader and overall manager of the VCFO" is Defendant Jesus Salas-Aguayo.  Indictment ¶ 6, at 3.  See Acee Aff. ¶ 7, at 2-3.

5.      Salas-Aguayo works with around a dozen "plaza bosses" who serve as "regional managers" and "report pertinent business information" back to him.  Indictment ¶ 6, at 3.

6.      The VCFO relies on Mexican farmers, the majority of whom are native "Mexican Indians" living in rural Chihuahua, to grow and harvest the marijuana that the VCFO distributes. Indictment ¶ 8, at 5.

7.      After the marijuana is harvested, it is processed and packaged into sacks at cartel ranches, and then transported to the town of Villa Ahumada.  See Indictment ¶ 8, at 5.

8.       Marijuana loads are transported onwards from Villa Ahumada -- "usually . . . under marked police vehicle escort" -- by the VCFO's transportation team "every 10-14 days."  Indictment ¶ 9, at 5-6.

9.      These shipments travel "north to Ciudad Juarez, west to Palomas, or east to Ojinga," the three plazas that "serve as the VCFO's primary smuggling route[s] into the United States."  Indictment ¶ 9, at 6.

2.     **The Federal Bureau of Investigation's ("FBI") Investigation into the VCFO**.

10.     In October, 2010, the FBI began an investigation into a specific VCFO "cell."  Draft Transcript of Hearing at 28:25-29:4 (taken October 5, 2023)(Acee)("October Tr.").[1]  See id. 27:15 (Acee); FBI Report at 1.

11.     Between February, 2011, and March, 2011, the FBI worked with two confidential human sources ("CHS") -- Oscar Carrasco-Celis, also known as CHS, October Tr. at 46:18 (Acee, Johnson), and Juana Vasquez, also known as CW1, see October Tr. at 27:21-22 (Acee, Johnson) -- to purchase 600 kilograms of marijuana from the VCFO, see FBI Report at 3.

12.     Between March 12, 2011, and March 16, 2011, Carrasco-Celis and Vasquez contacted Defendant Elmy Hermosillo-Trujillo to purchase a shipment of marijuana to be sold to a buyer in Albuquerque, New Mexico.  See FBI Report at 1, 3; October Tr. at 17:11-12 (Acee); Acee Aff. ¶ 8, at 3.

13.     Trujillo, who served as "La Oficina" or the central dispatch and communications manager for the VCFO, subsequently authorized the purchase.  FBI Report at 3.  See Acee Aff. ¶ 8, at 3.

14.     On March 19, 2011, the purchased marijuana was delivered to Carrasco-Celis and Vasquez.  See FBI Report at 1, 3; October Tr. at 107:16-108:14 (Court, Acee, Castellano, Johnson).

15.     The marijuana arrived in a dump truck "wrapped in enormous bundles," and Quintana and several of his men, all of whom were dressed as police officers and drove police

---

[1]The Court's citations to the transcripts of the hearings refer to the court reporter's original, unedited versions.  Any final transcripts may contain slightly different page and/or line numbers.

cars, escorted the truck.  See October Tr. at 107:1-109:17 (Acee, Castellano); Draft Transcript of

Hearing at 89:12-25 (taken November 3, 2023)(Acee, Castellano)("November Tr.").

16.     At the time Quintana escorted the marijuana load to Gomez Farias, he served as a

"plaza boss" for the region, meaning he "oversaw all operations and answered to the cartel for the

hierarchy for that plaza,"  November Tr. at 76:21-24 (Acee), and was also recognized as an

unsanctioned chief of police for the Namiquipa region, see November Tr. at 119:21-120:20 (Acee,

Johnson)("He was carrying on [] the function [] of the police driving a police car[,] pulling people

over, identifying people, using a ra[d]io."); Acee Aff. ¶ 9, at 4 ("Quintana and his men dropped

off the marijuana.").

17.     Batista-Carrasco, who later became an informant for the United States, "inspected

the marijuana load when it arrived at Gomez Farias."  November Tr. at 45:8-13 (Acee, Castellano).

18.     Carrasco-Celis then contacted Defendant Raul Corella-Hernandez, the head of the

VCFO's transportation team, and notified him that they had a shipment of Marijuana to be

transported to Albuquerque, New Mexico.  See FBI Report at 1, 3.

19.     Corella-Hernandez collected the marijuana on March 23, 2011, and transported it

to Villa Ahumada.  See FBI Report at 1; Acee Aff. ¶ 11, at 5.

20.     That same day, Carrasco-Celis received a telephone call from Defendant Jorge

Adrian Ortega-Gallegos informing him that "the cows had arrived and are safe at . . . Villa

Ahumada."  FBI Report at 1.  See Acee Aff. ¶ 12, at 5.

21.     Ortega-Gallegos, who "worked under Salas-Aguayo," inventoried the marijuana

upon its arrival in Villa Ahumada.  See Acee Aff. ¶ 7, at 3.

22.     On March 24, 2011, Mexican law enforcement raided a ranch in Villa Ahumada, and seized drug trafficking equipment and weapons, although they did not find any persons or marijuana.  See FBI Report at 1; Acee Aff. ¶ 13, at 5-6.

23.     At approximately 5:00 p.m. on March 25, 2011, Carrasco-Celis was kidnapped at gunpoint from a residence in Chihuahua City.  See FBI Report at 1.

24.     When Carrasco-Celis was kidnapped, individuals in police uniforms stood watch outside of the residence.  See November Tr. at 117:19-20 (Acee).

25.     Carrasco-Celis has not "been heard from again since" his kidnapping and is presumed dead.  November Tr. at 126:10-22 (Acee, Castellano).

26.     Before his kidnapping, Carrasco-Celis was meeting with representatives of the Sinaloa cartel.  See November Tr. at 116:9-11 (Acee, Johnson).

27.     On March 26, 2011, Mexican law enforcement raided a "stash house in Ciudad Juarez," where they killed one VCFO member in a shootout, arrested four additional members, and recovered "approx. 1,500  kgs of marijuana," and other drug trafficking equipment and weapons.  FBI Report at 1.  See Acee Aff. ¶ 14, at 6.

## PROCEDURAL BACKGROUND

The FBI's 2011 investigation into the VCFO cell resulted in this case.  On December 5, 2012, a Grand Jury returned the first indictment.  See Indictment at 1, filed December 5, 2012 (Doc. 2).  On July 24, 2014, a Grand Jury returned the second indictment in this case, which superseded the initial indictment.  See Superseding Indictment at 1, filed July 24, 2014 (Doc. 9). On July 23, 2015, a Grand Jury returned the Indictment, which superseded the two initial indictments.  See Indictment at 1.  Count 1 of the Indictment charges five Defendants -- Salas-Aguayo, Trujillo, Quintana, Corella-Hernandez, and Ortega-Gallegos -- with conspiracy to

distribute and import one hundred kilograms or more of marijuana in violation of 21 U.S.C. §§ 959(a), 960(a)(3) and (b)(2)(G), and in violation of 21 U.S.C. § 963.  See Indictment at 6.  The United States conveyed its proposed sixteen co-conspirator statements to Quintana.  See Objections at 1; James Table, infra at 47-51 (listing the statements alongside the Court's rulings as to each statement's admissibility).

## LAW REGARDING HEARSAY

"Hearsay testimony is generally inadmissible."  United States v. Christy, 2011 WL 5223024, at *5 (D.N.M. 2011)(Browning, J.)(citing Fed. R. Evid. 802).  Under rule 801(c) of the Federal Rules of Evidence, "hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed. R. Evid. 801(c).  Hearsay evidence is generally inadmissible, "because it is considered unreliable." United States v. Lozado, 776 F.3d 1119, 1121 (10th Cir. 2015)(citing Williamson v. United States, 512 U.S. 594, 598 (1994)).

For the purposes of hearsay, a "statement" is defined as "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion."  Fed. R. Evid. 801(a). Non-assertions, therefore, such as "questions or requests," are generally not excluded as hearsay. United States v. Alcorta, 853 F.3d 1123, 1141 (10th Cir. 2017).  The determination of whether something constitutes a statement turns on "the declarant's intent."  30B Charles Allen Wright & Arthur R. Miller, Federal Practice & Procedure § 6714 (3d ed. 2023).  See Richard A. Lloret, Assertion and Hearsay, 125 Dick. L. Rev. 347, 356 (2021).  Similarly, "[i]f the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay."  Echo Acceptance Corp. v. Household Retail Servs.,

Inc., 267 F.3d 1068, 1087 (10th Cir. 2001)(quoting Fed. R. Evid. 801 Advisory Committee's Note (1972)).  United States v. Ballou, 59 F. Supp. 3d 1038, 1072 n.15 (D.N.M. 2014)(Browning, J.).

Under the non-hearsay umbrella, the Tenth Circuit has acknowledged that, "in conspiracy cases . . . [s]tatements by coconspirators are commonly introduced at trial simply because the statements themselves are part of the plotting to commit a crime."  United States v. Faulkner, 439 F.3d 1221, 1226 (10th Cir. 2006).  Such statements properly are considered non-hearsay, because the "coconspirator is not asserting the truth of a historical event.  Rather, he is directing the conduct of a fellow conspirator or agreeing to follow directions."  United States v. Faulkner, 439 F.3d at 1226.  See id. at 1226-27 ("If three persons are prosecuted for conspiracy, the conversation in which they plan the venture and agree to participate is not hearsay, and the words spoken by each may be proved against all . . . ." (quoting Christopher B. Mueller, The Federal Coconspirator Exception: Action, Assertion, and Hearsay, 12 Hofstra L. Rev. 323, 326 (1984)));  United States v. Cesareo-Ayala, 576 F.3d 1120, 1128 (10th Cir. 2009)(declining to address the defendant's argument that co-conspirator statements were improperly admitted under rule 801(d)(2)(E), because they were admissible as non-hearsay statements not offered for the truth of the matters asserted).

Similarly, courts have held that verbal efforts to purchase drugs are not hearsay, because they are not offered for their truth, but are provided to illustrate the declarants' efforts to initiate a drug deal.  See United States v. Tenerelli, 614 F.3d 764, 772 (8th Cir. 2010)(holding that the statement "[s]he ordered methamphetamine" was not hearsay, because the testifying officer "testified about the fact that the order occurred, a verbal act of which [he] had personal knowledge"); United States v. Oguns, 921 F.2d 442, 448-49 (2d Cir. 1990)(admitting declarant's statement, "[h]ave the apples arrived there?" where evidence established that "apples" meant

drugs, as non-hearsay, because it was offered as "circumstantial evidence of [the declarant's] knowledge and intent" -- in other words "not for the truth of what was said but simply as evidence that such a statement was made"). Questions and commands are often, but not always, non-hearsay. See, e.g., United States v. Summers, 414 F.3d 1287, 1300 (10th Cir. 2005)(recognizing "that a declaration in the form of a question" ordinarily will be non-hearsay); United States v. Diaz, 670 F.3d 332, 346 (1st Cir. 2012)("Out-of-court statements providing directions from one individual to another do not constitute hearsay."). "Because there may be instances where a party attempts to admit hearsay by cloaking statements under the guise of a question," however, questions and commands may constitute hearsay, and "the focus of the inquiry should be on what the declarant intended to say, whether implied or directly asserted." U.S. v. Torres, 794 F.3d 1053, 1061 (9th Cir. 2015). See United States v. Summers, 414 F.3d at 1300.

The Tenth Circuit has cautioned trial courts against allowing the unfettered use of non-hearsay to provide background information regarding an investigation "if the statements present too great a danger of prejudice." See United States v. Cass, 127 F.3d 1218, 1223 (10th Cir. 1997); United States v. Freeman, 816 F.2d 558, 563 (10th Cir. 1987)("[O]ut-of-court statements by informants offered to explain the background of an investigation, like all evidence, must be evaluated under the criteria in Fed. R. Evid. Rules 401 and 403 for relevance and to prevent confusion or prejudice on the part of the jury."). Where a statement is disguised as "background" actually "bear[s] on the ultimate issue," courts must consider the prejudice that would result if the jury considered the statement for its truth. United States v. Hinson, 585 F.3d 1328, 1337 (10th Cir. 2009). Where a jury may use a statement for both a permissible and impermissible purpose, the Court may give a limiting instruction. See Fed. R. Evid. 105; United States v. DeLeon, No. CR 15-4268, 2021 WL 4171506, at *6 (D.N.M. September 14, 2021)(Browning, J.)(giving a

limiting instruction where a co-conspirator statement was "not offered to prove the truth of the matter asserted").  Finally, rule 805 of the Federal Rules of Evidence recognizes that "[h]earsay within hearsay" -- commonly referred to as double hearsay -- may be admissible "if each part of the combined statements conforms with an exception to the rule."  Fed. R. Evid. 805.

   1.    **Law Regarding Rule 801(d)(2)(E).**

   While hearsay evidence usually is not admissible, see Fed. R. Evid. 802, some out-of-court statements are not hearsay even when they are offered for the proof of the matter asserted, see Fed. R. Evid. 801(d).  Statements that are "offered against an opposing party" and were "made by the party's coconspirator during and in furtherance of the conspiracy" are not hearsay.  Fed. R. Evid. 801(d)(2)(E).  To admit out-of-court statements by co-conspirators under rule 801(d)(2)(E), "the United States must demonstrate by a preponderance of the evidence that: (i) a conspiracy existed; (ii) the declarant and the defendant were members of that conspiracy; and (iii) the statements that the United States seeks to admit were made during the course and in furtherance of the conspiracy." United States v. Vigil, No. CR 05-2051, 2006 WL 4109681, at *3 (D.N.M. August 31, 2006)(Browning, J.)(citing United States v. Sinclair, 109 F.3d 1527, 1533 (10th Cir. 1997)).  The conspiracy to be proven by a preponderance of the evidence for the purposes of admitting co-conspirator statements need not be the same conspiracy charged in the indictment, see United States v. Marino, 277 F.3d 11, 25-26 (1st Cir. 2002)("[A]nother conspiracy, larger than the one charged at trial, may provide the basis for the admission of the coconspirator's statements."); but see United States v. Cambindo Valencia, 609 F.2d 603, 636 (2d Cir. 1979)("We are inclined to the narrower construction of the rule, limiting the admission of hearsay statements only to those made by coconspirators of the conspiracy charged or proved."), and the co-conspirator exception may apply even where no conspiracy was charged, see S. Rep. No. 93-1277, at 26 (1974)("While the

rule refers to a coconspirator, it is this committee's understanding that the rule is meant to carry forward the universally accepted doctrine that a joint venturer is considered as a coconspirator for the purposes of this rule even though no conspiracy has been charged."); United States v. Kaatz, 705 F.2d 1237, 1244 (10th Cir. 1983); United States v. DiRosa, 761 F.3d 144, 155 (1st Cir. 2014).

In determining the admissibility of co-conspirator statements, "[t]he strongly preferred order of proof" is for the district court to hold a hearing "outside the presence of the jury to determine by a preponderance of the evidence the existence of a predicate conspiracy." United States v. Urena, 27 F.3d 1487, 1491 (10th Cir. 1994). A defendant does not possess a right to a pretrial hearing on admissibility of co-conspirators statements; however, "a district court can only admit coconspirator statements if it holds a James hearing or conditions admission on forthcoming proof of a 'predicate conspiracy through trial testimony or other evidence.'" United States v. Townley, 472 F.3d 1267, 1273 (10th Cir. 2007)(quoting United States v. Owens, 70 F.3d 1118, 1123 (10th Cir. 1995)). The Tenth Circuit affords trial courts this flexibility, because it recognizes that it is not always practical for the United States to demonstrate that a conspiracy existed before admitting specific evidence at trial. See United States v. Peterson, 611 F.2d 1313, 1330 (10th Cir. 1979)(noting that the admissibility determination contemplates presentation of requisite conspiracy evidence before or during the United States' case in chief.

The Court may consider the statements themselves, as well as independent evidence, to determine whether the conspiracy existed. See United States v. Lopez-Gutierrez, 83 F.3d 1235, 1242 (10th Cir. 1996)("In making its preliminary factual determination as to whether a conspiracy exists, the court may consider the hearsay statement sought to be admitted, along with independent evidence tending to establish the conspiracy."). While the statement itself "does not by itself establish . . . the existence of the conspiracy or participation in it," Fed. R. Evid. 801(d)(2), "'there

need only be some independent evidence linking the defendant to the conspiracy,'" United States v. Lopez-Gutierrez, 83 F.3d at 1242 (quoting United States v. Martinez, 825 F.2d 1451, 1453 (10th Cir. 1987)).  This "independent evidence may be sufficient even when it is not 'substantial.'" United States v. Lopez-Gutierrez, 83 F.3d at 1242 (internal citation omitted).  The Tenth Circuit has noted: "We have defined 'independent evidence' as 'evidence other than the proffered coconspirator statements themselves.'"   United States v. Lopez-Gutierrez, 83 F.3d at 1242 (quoting United States v. Martinez, 825 F.2d at 1451).

"[T]o qualify for the coconspirator exception a statement must have been made during the conspiracy." United States v. Alcorta, 853 F.3d at 1139.  "Statements made after the objectives of the conspiracy have either failed or been achieved are not made during the conspiracy and must be excluded."  United States v. Alcorta, 853 F.3d at 1139.  It is unnecessary, however, "for the United States to show that proffered statements were made during the time in which [the defendant] was a member of a conspiracy." United States v. Vigil, 2006 WL 4109681, at *5.  See United States v. U.S. Gypsum Co., 333 U.S. 364, 393 (1948)("With the conspiracy thus fully established, the declarations and acts of the various members, even though made or done prior to the adherence of some to the conspiracy, become admissible against all as declarations or acts of co-conspirators in aid of the conspiracy.").  This rule exists, because "a newcomer to a conspiracy assumes the risk for what has already happened in the course of the conspiracy." United States v. DeLeon, 2021 WL 4171506 at *4.  See United States v. Brown, 943 F.2d 1246, 1255 (10th Cir. 1991)("The fact that appellant may have joined the conspiracy after its inception does not make his co-conspirators' previous statements inadmissible."); United States v. Adamo, 882 F.2d 1218, 1230-31 (7th Cir. 1989)(holding one who joins and participates in a conspiracy "adopt[s] the previous acts and declarations of his fellow co-conspirators").

In addition, statements admissible under rule 801(d)(2)(E) must be made "in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E).   "When inquiring whether a statement was made 'in furtherance of' a conspiracy," courts focus "on the declarant's intent in making the statement." United States v. Perez, 989 F.2d 1574, 1578 (10th Cir. 1993)(quoting United States v. Nazemian, 948 F.2d 522, 529 (9th Cir. 1991).  Statements may be properly considered "in furtherance of the conspiracy," therefore, even when they are made to a government informant or another individual who is not a member of the conspiracy.  See United States v. Smith, 833 F.2d 213, 219 (10th Cir. 1987)(holding that tape-recorded conversations between defendant's wife and government informant were admissible under co-conspirator's statement exception to hearsay rule); United States v. Colon-Diaz, 521 F.3d 29, 36 n.3 (1st Cir. 2008); United States v. Haynie, 179 F.3d 1048, 1051 (7th Cir. 1999)(holding that statements made by a co-conspirator to a government informant were admissible in conspiracy trial as statements of co-conspirator made in furtherance of conspiracy).  The United States Court of Appeals for the First Circuit has recognized:

> It is immaterial that the other person in the conversation, Romero, was not a coconspirator but a government informant. [United States v. Piper, 298 F.3d 47, 53 (1st Cir. 2002)]("[S]tatements made [by a co-conspirator declarant] in the course of a discussion between [him] and a third party who is a stranger to the conspiracy are admissible under Rule 801(d)(2)(E), provided that they meet the Rule's foundational requirements[,] ... regardless of whether the third party is a tipster, an informant, an undercover officer, or a mere acquaintance.").

United States v. Colon-Diaz, 521 F.3d at 36 n.3.

### 2.    Law Regarding Rule 803(3).

Rule 803(3) permits the introduction of "hearsay . . . even though the declarant is available as a witness" for

> [a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact

remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

Fed. R. Evid. 803(3).  For the statement to qualify under the exception, it "must relate to the declarant's state of mind during" the incident in question.  United States v. Netschi, 511 F. App'x. 58, 61 (2d Cir. 2013).  See United States v. Cardascia, 951 F.2d 474, 488 (2d Cir. 1991)("To admit statements of one's state of mind with regard to conduct that occurred . . . earlier as in this case would significantly erode the intended breadth of this hearsay exception.").  This requirement is not to say that the statement must be said at the very moment of the incident, but for intent to be proved, it must be "contemporaneous" to the act.  Mutual Life Ins. Co. of New York v. Hillmon, 145 U.S. 285, 295 (1892).  To be contemporaneous and therefore admissible under the present state of mind exception, a statement must be "part of a continuous mental process."  United States v. Cardascia, 951 F.2d at 488.

In addition to the requirement that the statement be contemporaneous to the incident at issue, it must also be established that there was no opportunity for the declarant to "fabricate or to misrepresent his thoughts."  United States v. Jackson, 780 F.2d 1305, 1315 (7th Cir. 1986).  The statements of intent must reveal information or details about the future, which has been contrasted with statements of memory, or looking back to the past.  See Shepard v. United States, 290 U.S. 96, 104 (1933).  When statements entail issues of looking into the past combined with other concerns, it can often be too confusing for a jury to extract, upsetting the balance of advantage, and ultimately making the evidence inadmissible.  See Shepard v. United States, 290 U.S. at 104. "The most obvious risk of prejudice is that the jury will consider the hearsay statement not as proof of state of mind and the subsequent conduct of the declarant, but rather for the truth of the facts that are related in the statement."  4 Stephen A. Saltzburg, Michael M. Martin & Daniel J. Capra,

Fed. Rules of Evidence Manual, §803.02 (11th ed. 2017).  See United States v. DeLeon, 2021 WL 4171506, at *5.

   **3.    Law Regarding Rule 804(b)(3).**

   Under rule 804(b)(3) of the Federal Rules of Evidence, an out-of-court statement is admissible if the declarant is unavailable to testify, and the statement is "against the declarant's proprietary, pecuniary, or penal interest." United States v. Lozado, 776 F.3d 1119, 1125 (10th Cir. 2015)(citing Fed. R. Evid. 804(b)(3)(A).  A statement against interest is one that "a reasonable person in the declarant's position would have made only if the person believed it to be true."  Fed. R. Evid. 804(b)(3)(A).   Moreover, the statement must be "supported by corroborating circumstances that clearly indicate its trustworthiness."  Fed. R. Evid. 804(b)(3)(B).

   Rule 804(b)(3) embodies "the commonsense notion that reasonable people, even reasonable people who are not especially honest, tend not to make self-inculpatory statements unless they believe them to be true." Williamson v. United States, 512 U.S. 594, 599 (1994)).  The Tenth Circuit has said: "We may safely surmise that from time immemorial, only on the rarest occasion, if ever, has one of sound mind -- even one of sound mind who is not particularly honest -- falsely confessed a murder to an apparent acquaintance or friend." United States v. Smalls, 605 F.3d 765, 783 (10th Cir. 2010).  Statement are admissible under rule 804(b)(3), however, only to the extent that they inculpate the declarant, because "[t]he fact that a statement is self-inculpatory does make it more reliable; but the fact that a statement is collateral to a self-inculpatory statement says nothing at all about the collateral statement's reliability." Williamson v. United States, 512 U.S. at 600.  See United States v. Baca, 447 F. Supp. 3d 1149, 1206-07 (D.N.M. 2020)(Browning, J.); United States v. DeLeon, 287 F. Supp. 3d 1187, 1240 (D.N.M. 2018)(Browning, J.).

4.      **Law Regarding Rule 804(b)(6).**

Rule 804(b)(6) admits statements that otherwise would be excluded as hearsay where the statements are "offered against a party that wrongfully caused -- or acquiesced in wrongfully causing -- the declarant's unavailability as a witness, and did so intending that result."  Fed. R. Evid. 804(b)(6).  See Reynolds v. United States, 98 U.S. 145, 158 (1878)("The Constitution gives the accused the right to a trial at which he should be confronted with the witnesses against him; but if a witness is absent by [the accused's] own wrongful procurement, he cannot complain if competent evidence is admitted to supply the place of that which he has kept away.").  To find that the forfeiture-by-wrongdoing exception applies, "the district court must find, by the preponderance of the evidence that (1) the defendant engaged or acquiesced in wrongdoing (2) that was intended to render the declarant unavailable as a witness and (3) that did, in fact, render the declarant unavailable as a witness."  United States v. Gray, 405 F.3d 227, 241 (4th Cir. 2005).

The doctrine enables the admission of hearsay statements against "a defendant who 'acquiesced' in the wrongful procurement of a witness's unavailability but did not actually 'engage[]' in wrongdoing apart from the conspiracy itself."  United States v. Cherry, 217 F.3d 811, 816 (10th Cir. 2000)(quoting Fed. R. Evid. 804(b)(6)).  This rule means that a defendant waives his or her "hearsay objections" where "the wrongful procurement was in furtherance, within the scope, and reasonably foreseeable as a necessary or natural consequence of an ongoing conspiracy."  United States v. Cherry, 217 F.3d at 820.  The primary purpose of the forfeiture-by-wrongdoing doctrine is to "'remove the otherwise powerful incentive for defendants to intimidate, bribe, and kill the witnesses against them -- in other words, it is grounded in the ability of the courts to protect the integrity of their proceedings.'"  State v. Jako, 245 W. Va. 625, 633 (2021), cert. denied sub nom. Jako v. W. Virginia, 142 S. Ct. 1680 (2022)(quoting People v. Reneaux, 50

Cal. App. 5th 852, 865 (2020)).

## LAW REGARDING CONSPIRACY

The Tenth Circuit has outlined what the United States must prove to establish the existence

of a conspiracy:

> To prove conspiracy, the government must show: (1) that two or more people agreed to violate the law, (2) that the defendant knew at least the essential objectives of the conspiracy, (3) that the defendant knowingly and voluntarily became a part of it, and (4) that the alleged co-conspirators were interdependent. [United States v. Evans, 970 F.2d 663, 668 (10th Cir. 1992).] . . . "[A] single conspiracy does not exist solely because many individuals deal with a common central player." *Id.* at 670. "What is required is a shared, single criminal objective, not just similar or parallel objectives between similarly situated people." *Id.* On the other hand, "[a] defendant need not have knowledge of all the details or all the members of the conspiracy and may play only a minor role in the conspiracy." *United States v. Mendoza-Salgado*, 964 F.2d 993, 1005 (10th Cir. 1992)(quotation omitted). The government need only prove by direct or circumstantial evidence "that the defendant knew at least the essential objectives of the conspiracy and the defendant knowingly and voluntarily became part of it." *Id.* (quotation omitted).

United States v. Small, 423 F.3d 1164, 1182-83 (10th Cir. 2005)(only the third alteration in United

States v. Small).   See United States v. Leal, 330 F. Supp. 3d 1257, 1278-78 (D.N.M.

2018)(Browning, J.)(determining whether the indictment charges a new, separate conspiracy

which does not violate Double Jeopardy).  Conspiracy is not a collection of various separate and

distinct events, but rather is "the prototypical continuing offense."  United States v. Acosta-

Gallardo, 656 F.3d 1109, 1122 (10th Cir. 2011)(internal quotation marks omitted)(quoting United

States v. Jaynes, 75 F.3d 1493, 1505 (10th Cir. 1996)). "A conspirator . . .  is only liable for the

acts of co-conspirators until the conspiracy accomplished its goals or that conspirator withdraws."

United States v. Cherry, 217 F.3d at 817.  See United States v. DeLeon, 418 F. Supp. 3d 682, 746-

47 (D.N.M. 2019)(Browning, J.).

## LAW REGARDING THE CONFRONTATION CLAUSE

The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI.  In Crawford v. Washington, the Supreme Court of the United States held that, consistent with the Sixth Amendment, "[t]estimonial [hearsay] statements of witnesses absent from trial [are admissible] only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine."  541 U.S. at 59.  In Davis v. Washington, 547 U.S. 813 (2006), the Supreme Court further elaborated on what constitutes a "testimonial" statement:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency.  They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

547 U.S. at 822.  See Ohio v. Clark, 576 U.S. 237, 245 (2015)("[A] statement cannot fall within the Confrontation Clause unless its primary purpose was testimonial.").  The United States Court of Appeals for the Tenth Circuit has restated this rule, defining a testimonial statement as "a 'formal declaration made by the declarant that, when objectively considered, indicates' that the 'primary purpose of the [statement is] to establish or prove past events potentially relevant to later criminal prosecution.'"  United States v. Morgan, 748 F.3d 1024, 1048 (10th Cir. 2014)(alteration in original)(quoting United States v. Smalls, 605 F.3d 765, 777-78 (10th Cir. 2010)).  Accord United States v. Chaco, 801 F. Supp. 2d 1200, 1209-10 (D.N.M. 2011)(Browning, J.)(discussing developments in Tenth Circuit precedent on the test regarding what qualifies as a testimonial statement).

In Melendez-Diaz v. Massachusetts, 557 U.S. 305 (2009), the Supreme Court addressed whether the admission of a sworn affidavit by a forensic chemist, who testified in the affidavit that the substance which police seized from the defendant was cocaine of a certain amount, violated the Confrontation Clause.  See 557 U.S. at 307.  The Supreme Court first found that such affidavits were testimonial, because they were "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial" and because, under Massachusetts law, the sole purpose of the affidavit was to provide prima facie evidence of the content of the substance seized.  557 U.S. at 310.  The Supreme Court then used the affidavit introduced by the prosecution to outline its concerns regarding the lack of cross-examination when such affidavits are introduced as evidence:

> The affidavits submitted by the analysts contained only the bare-bones statement that "[t]he substance was found to contain: Cocaine."  At the time of trial, petitioner did not know what tests the analysts performed, whether those tests were routine, and whether interpreting their results required the exercise of judgment or the use of skills that the analysts may not have possessed.  While we still do not know the precise tests used by the analysts, we are told that the laboratories use "methodology recommended by the Scientific Working Group for the Analysis of Seized Drugs[.]"  At least some of that methodology requires the exercise of judgment and presents a risk of error that might be explored on cross-examination.

557 U.S. at 320 (citation omitted).  Because there was no opportunity to cross-examine on these issues, the Supreme Court concluded that introduction of the affidavit violated the defendant's rights under the Confrontation Clause.  See 557 U.S. at 329 ("The Sixth Amendment does not permit the prosecution to prove its case via ex parte out-of-court affidavits, and the admission of such evidence against Melendez-Diaz was error.").  The Supreme Court has since extended this holding to "forensic laboratory report[s] containing a testimonial certification -- made for the purpose of proving a particular fact -- through the in-court testimony of a scientist who did not sign the certification or perform or observe the test reported in the certification."  Bullcoming v.

New Mexico, 564 U.S. 647, 661 (2011)("Accordingly, the analysts who write reports that the prosecution introduces must be made available for confrontation even if they possess 'the scientific acumen of Mme. Curie and the veracity of Mother Teresa.'" (quoting Melendez-Diaz v. Massachusetts, 557 U.S. at 319 n.6)).

## ANALYSIS

The parties dispute the admissibility under rule 801(d)(2)(E) of various co-conspirator statements. It is both proper and appropriate for the Court to make rulings by category and subject -- rather than analyze every single line of the statements. United States v. Stein, 985 F.3d 1254, 1268-69 (10th Cir. 2021)(affirming a district court's decision to admit co-conspirator statements in their entirety instead of "sentence-by-sentence"). The Court concludes that: (i) statements twelve, thirteen, fourteen and fifteen, are admissible as co-conspirator statements; (ii) statements one through eleven, in addition to statements thirteen and sixteen are admissible because they are not hearsay, see Fed. R. Evid. 801(c); (iii) statements one and five are admissible under rule 803(3); (iv) statements two, three, five, seven, eight, and thirteen are admissible under rule 804(b)(3); (v) statements made by Carrasco-Celis are not admissible under rule 804(b)(6); and (vi) the Confrontation Clause does not bar the admission of any proffered statement. Accordingly, the Court overrules the Objections.

## I.     STATEMENTS ADMISSIBLE AS CO-CONSPIRATOR STATEMENTS UNDER RULE 801(d)(2)(E).

Statements twelve, thirteen, fourteen and fifteen, are admissible as co-conspirator statements under rule 801(d)(2)(E). To admit out-of-court statements by co-conspirators under rule 801(d)(2)(E), the United States must demonstrate by a preponderance of the evidence that: (i) a conspiracy existed; (ii) the declarant and the defendant were both members of the conspiracy;

and (iii) the statements were made in the course of and in furtherance of the conspiracy.  See United States v. Sinclair, 109 F.3d at 1533; United States v. Owens, 70 F.3d at 1123.  The Court concludes that: (i) a conspiracy to transport 600 kilograms of marijuana with the intent that the shipment would be distributed in the United States existed and began at some point after the initial conversation between Carrasco-Celis and Trujillo, which took place at some point between March 12, 2011, and March 16, 2011, and before the delivery of the marijuana shipment to Gomez Farias on March 19, 2011; (ii) Quintana and all declarants other than Carrasco-Celis, who was a government informant at the time he made the alleged co-conspirator statements, were members of the conspiracy; and (iii) statements twelve, thirteen, fourteen and fifteen were made during and in furtherance of the conspiracy.

### A.    A CONSPIRACY TO DISTRIBUTE 600 KILOGRAMS OF MARIJUANA CAME INTO EXISTENCE AT SOME POINT BETWEEN THE INITIAL CONVERSATION BETWEEN CARRASCO-CELIS AND TRUJILLO, AND THE DELIVERY OF THE MARIJUANA SHIPMENT TO GOMEZ FARIAS.

To prove the existence of a conspiracy, the United States must show, and the district court must find by a preponderance of the evidence for the purposes of rule 801(d)(2)(E), that "(1) there was an agreement to violate the law, (2) the declarant knew the essential objectives of the conspiracy, (3) the declarant knowingly and voluntarily took part in the conspiracy, and (4) the coconspirators were interdependent."  United States v. Rutland, 705 F.3d 1238, 1249 (10th Cir. 2013).  In establishing a conspiracy, the United States must provide "some independent evidence" linking the Defendants to the conspiracies -- the use of the proffered co-conspirator statements without more is insufficient.  United States v. DeLeon, 2021 WL 4171506, at *4 (citing United States v. Lopez-Gutierrez, 83 F.3d at 1242).  See United States v. Martinez, 825 F.2d 1451, 1452 (10th Cir. 1987).  "Such evidence, however, may be inferred 'from the defendants' conduct and

other circumstantial evidence indicating coordination and concert of action." United States v. Leveille, No. 18-CR-2945, 2023 WL 5835889, at *7 (D.N.M. September 8, 2023)(Johnson, C.J.)(quoting United States v. Wardell, 591 F.3d 1279, 1287 (10th Cir. 2009)).

### 1. No Conspiracy to Distribute the Marijuana Existed at the Time of the Conversation Between Carrasco-Celis and Trujillo.

At the James hearings, the Court heard testimony from Acee and received multiple exhibits from the United States and Quintana, see October Tr. at 125:10-126:4 (Court, Castellano, Johnson), all of which is proper for the Court to consider when determining if the Government has carried its evidentiary burden, see United States v. Owens, 70 F.3d at 1124 (conducting a James hearing wherein only one Government witness, an FBI Special Agent, testified and explaining that a district court has discretion to consider "any evidence not subject to a privilege, including both the coconspirator statements the government seeks to introduce at trial and any other hearsay evidence, whether or not that evidence would be admissible at trial" when determining whether a conspiracy exists). See Fed. R. Evid. 104(a). The United States first argues that statements two, three, five, six, seven, and eight, all of which Trujillo made to Carrasco-Celis during the initial telephone conversation, are admissible as co-conspirator statements under rule 801(d)(2)(E).[2] See, e.g., October Tr. at 63:6-19 (Castellano)(averring that statement three was admissible as a co-conspirator statement). For any of statements one through eight to meet the requirements of a co-conspirator statement, the United States first must demonstrate the existence of a conspiracy. See United States v. Sinclair, 109 F.3d at 1533.

According to the United States, in the initial telephone conversation, Carrasco-Celis was

---

[2]The United States clarified that it is not arguing that statements made by Carrasco-Celis during this conversation constituted co-conspirator statements, because Carrasco-Celis was an informant when he made the statements. See October Tr. at 53:4-6 (Castellano).

directed to call Trujillo to arrange the shipment of marijuana.  See October Tr. at 14:15-24 (Acee, Castellano).  At this point, the only two individuals who could be members of conspiracy to transport the 600 kilograms of marijuana are Carrasco-Celis and Trujillo.  See October Tr. at 8:2-22 (Court, Castellano).  Because Carrasco-Celis was a confidential human source at the time of the conversation, however, he "cannot count" toward the requirement that two or more people agree to form a conspiracy.  United States v. Leal, 921 F.3d at 959.  See United States v. Barboa, 777 F.2d 1420, 1422 (10th Cir. 1985)("[T]here can be no indictable conspiracy involving only the defendant and government agents or informers.").  The United States argues that, despite Carrasco-Celis' status as an informant, a conspiracy was established at the time of this conversation, because other members of the conspiracy set the prices that Trujillo used to set the amount of marijuana Carrasco-Celis could purchase with $50,000.   See October Tr. at 42:6-43:8 (Court, Acee, Castellano, Johnson).  The United States explained:

> I think we can look at the larger context though that [Trujillo] is not the one who actually set these prices[,] he's conveying information to others about what the prices and things of that nature.  So he's expressing [what he] knows from his membership in the conspiracy.  He doesn't set those price[s,] so he's showing agreement that other people set the prices he conveyed that information to somebody that wants to buy the load.

October Tr. at 51:4-13 (Castellano).  In other words, the United States argues that a conspiracy to distribute a specific amount of marijuana at a specific time can be presupposed on the basis of the alleged co-conspirators' presumed, prior agreement to distribute marijuana generally.  Because the United States must show, an "agreement to accomplish a specific illegal objective" to establish a conspiracy, the Court disagrees with the United States' formulation of the conspiracy in this case and believes it sweeps too broadly.  United States v. Melchor-Lopez, 627 F.2d 886, 891 (9th Cir. 1980).

The United States Court of Appeals for the Ninth Circuit's decision in United States v. Garcia, 151 F.3d 1243 (9th Cir. 1998)("Garcia"), is instructive on this point.  In Garcia, the United States argued that gang members' implicit agreement to back one another up in fights established a conspiracy to assault.  See 151 F.3d at 1245.  The Ninth Circuit held that evidence of this agreement was "insufficient to provide proof of a conspiracy," because "establishes one of the characteristics of gangs but not a specific objective of a particular gang -- let alone a specific agreement on the part of its members to accomplish an illegal objective."  Garcia, 151 F.3d at 1245-46.  The same can be said for the United States' argument here.  By representing that members of the VCFO tacitly agreed to take part in the distribution of marijuana, the United States "establishes one of the characteristics" of drug trafficking organizations, Garcia, 151 F.3d at 1245-46, but the United States has not established that the alleged co-conspirators formed an "agreement to accomplish a specific illegal objective," United States v. Melchor-Lopez, 627 F.2d 891.

Moreover, the Tenth Circuit's direction that courts "guard against the mass application of guilt when conspiracy charges are involved because guilt is always dependent on personal and individual conduct, not on mere association or unknowing involvement" supports the conclusion that a narcotics trafficking conspiracy cannot be presupposed in this fashion.  United States v. Horn, 946 F.2d at 741.  See United States v. Perez, 989 F.2d 1574, 1579 (10th Cir. 1993)("In light of the [Supreme] Court's expressed concern that conspiracy prosecutions not be further broadened . . . a court must carefully ascertain the nature and extent of a conspiracy in determining whether acts or statements can properly be viewed as made during its existence.").  Accordingly, the United States has not established that a conspiracy existed at the time the conversation between Carrasco-Celis and Trujillo took place, because there was no agreement between two or more co-conspirators.  See United States v. Leal, 921 F.3d at 959.

Finally, while the Court recognizes that the conspiracy at issue for the purposes of rule 801(d)(2)(E) "need not be charged," United States v. DaVita Inc., 592 F. Supp. 3d 970, 980 (D. Colo. 2022)(Jackson, J.), the United States offers no independent evidence to support a finding by a preponderance of the evidence that a separate conspiracy beginning any time before the telephone call between Carrasco-Celis and Trujillo existed, see United States v. Johnson, 767 F.2d 1259, 1271 (8th Cir. 1985)("The government does not cite, nor can we find, independent evidence in the record that a conspiracy existed on or before Jan. 29.").[3]  The Court will not admit, therefore, statements two, three, five, six, seven, and eight under rule 801(d)(2)(E).

### 2.      A Conspiracy Came Into Existence After the Phone Call Was Placed.

The Court concludes, however, by a preponderance of the evidence, that a conspiracy, of which Quintana was a member, came into existence after the telephone call between Carrasco-Celis and Trujillo, and before the marijuana's delivery to Gomez Farias.  First, the United States proved the existence of an agreement, because the indicted co-conspirators "tacitly came to a mutual understanding."  United States v. Suntar Roofing, Inc., 897 F.2d at 474 (explaining that there is no requirement to prove an express or formal agreement was made).  On March 19, 2011, after the conversation between Carrasco-Celis and Trujillo in which Carrasco-Celis placed the order for marijuana and requested it be delivered to Gomez Farias, a delivery of marijuana that

---

[3]That the United States presented no evidence of a broader conspiracy separate from the conspiracy charged in the Indictment is unsurprising, because the United States clarified that the scope of the alleged conspiracy it seeks to prove "for the purposes of the court['s] rulings" pursuant to rule 801(d)(2)(E), is the movement of the 600-kilogram marijuana load identified in the Indictment with the intent that it be delivered to the United States, and not the co-conspirators' alleged involvement in the VCFO's drug distribution enterprise more broadly, see October Tr. at 131:18-132:12 (Court, Castellano); id. at 81:1-4 (Court)("I think we've laid the ground rules earlier, and just because there is testimony of that [ties] Mr. Quintana to the cartel, that's not he necessarily the same as the conspiracy here.").

was "consistent with the amount that had been ordered," October Tr. at 107:22-108:6 (Acee), by Carrasco-Celis, arrived in Gomez Farias, see FOF ¶¶ 14-16, at 4-5.  That the delivery arrived as ordered, and that Quintana accompanied the delivery and escorted it to its destination, allows for the reasonable inference that, after the conversation between Carrasco-Celis and Trujillo, Trujillo coordinated the delivery of the marijuana with other VCFO members, including Quintana, who were not informants.  See United States v. Suntar Roofing, Inc., 897 F.2d at 474 ("[T]he common purpose and plan may be disclosed only by the circumstances and acts of the members, such as their course of dealings.").  The fact of the delivery, and the co-conspirators' later actions and the conversations of co-conspirators to move the marijuana onward from Gomez Farias to Villa Ahumada further demonstrates that the co-conspirators had "specific roles," evincing their common plan or purpose.  United States v. Leveille, 2023 WL 5835889, at *9.  See November Tr. at 8:2-18 (Acee, Castellano)(describing the conversations that can be reasonably inferred to have taken place between co-conspirators after Carrasco-Celis ordered the marijuana); id. at 10:20-11:9 (Court, Castellano).

Second, that Quintana transported the marijuana through Chihuahua, see FOF ¶ 16, at 5, provides "evidence tending to show that [Quintana] shared a common purpose or design with his alleged coconspirators," United States v. Horn, 946 F.2d 738, 741 (10th Cir. 1991). Third, Quintana's active involvement in the delivery establishes sufficiently that Quintana acted voluntarily with knowledge of the conspiracy's "essential objectives." United States v. Small, 423 F.3d at 1182.  See United States v. Horn, 946 F.2d at 743-44 (holding that the record established the defendant's involvement in a conspiracy, because it showed the defendant "made deliveries [of drugs] on behalf of the conspiracy," and noting that "[b]y agreeing to perform these tasks, defendant became part of the larger common plan to distribute well in excess of fifty grams of

cocaine"). Finally, the co-conspirators' "interdependence" is well established. United States v. Small, 423 F.3d at 1182. For example, Trujillo accepted the order of marijuana, acted as a "central point of contact," and coordinated "large drug loads." Tr. at 16:15-25. See FOF ¶ 13, at 4. Quintana protected and escorted the marijuana and served as a "plaza boss." FOF ¶ 16, at 5. Corella-Hernandez coordinated the marijuana shipment's transportation. See FOF ¶¶ 18-19, at 5; United States v. Pickel, 863 F.3d 1240, 1252-53 (10th Cir. 2017)("[Interdependence] may be shown when a defendant's activities 'facilitated the endeavors of other alleged co-conspirators or facilitated the venture as a whole.'" (quoting United States v. Acosta-Gallardo, 656 F.3d 1109, 1124 (10th Cir. 2011)). Accordingly, a conspiracy, which began at some point between the telephone conversation between Carrasco-Celis and Trujillo, and the delivery of marijuana to Gomez Farias, existed. See United States v. Hamilton, 587 F.3d 1199, 1206 (10th Cir. 2009)("[B]ecause a criminal conspiracy by its very nature is usually shrouded in a further conspiracy of silence, the common plan or purpose must often be, and may legitimately be, proved by circumstantial evidence.").

## B. QUINTANA AND EACH DECLARANT OTHER THAN CARRASCO-CELIS WERE CONSPIRACY MEMBERS.

At the second step of the test to admit out-of-court co-conspirator statements under rule 801(d)(2)(E), the United States must demonstrate by a preponderance of the evidence that the declarant and the defendant were both conspiracy members. See United States v. Owens, 70 F.3d at 1123. Only slight evidence is required to demonstrate the defendant's participation in the conspiracy to permit the introduction of a co-conspirator's statement under rule 801(d)(2)(E). See United States v. Andrews, 585 F.2d 961, 964 (10th Cir. 1978). The United States provides evidence that, on March 19, 2011, Quintana delivered and escorted the 600-kilogram shipment of

marijuana that Carrasco-Celis ordered to Gomez Ferias sufficient to establish that Quintana was a conspiracy member.  See FOF ¶¶ 14-16, at 4-5.

In addition, the United States demonstrates that Trujillo, Corella-Hernandez, Batista-Carrasco, and Ortega-Gallegos, the declarants of the statements that the United States seeks to admit, were conspiracy members.   Trujillo served as "La Oficina" during the conspiracy, FOF ¶ 13, at 4, and played a central role in the marijuana's shipment.  Corella-Hernandez arranged the marijuana's transportation from Gomez Farias to Villa Ahumada, and ultimately completed the delivery.  See FOF ¶¶ 18-19, at 5.  Batista-Carrasco, who later became an informant for the United States, "inspected the marijuana load when it arrived at Gomez Farias."  November Tr. at 45:8-13 (Acee, Castellano).  See FOF ¶ 17, at 5.  Ortega-Gallegos "worked under Salas-Aguayo" and inventoried the marijuana upon its arrival in Villa Ahumada.  FOF ¶ 21, at 5.

Carrasco-Celis, the declarant for statements nine and sixteen, however, was a confidential informant throughout the conspiracy and, therefore, was never a conspiracy member.  See FOF ¶ 11, at 4; United States v. Leal, 921 F.3d at 959.  For the same reason, the second layer of hearsay in statements ten and eleven, wherein Carrasco-Celis communicates the statements Corella-Hernandez and Ortega-Gallegos made to him to Vasquez,  cannot come in under the co-conspirator exception.  Accordingly, statements nine and sixteen in addition to the second layer of hearsay in statements ten and eleven do not qualify as co-conspirator statements.  See Champagne Metals v. Ken-Mac Metals, Inc., 458 F.3d 1073, 1081 (10th Cir. 2006)("The co-conspirator hearsay exception contains no requirement that the declarant be a defendant, only that she be a member of the conspiracy."); Section I(C), infra at 30 n.4.

### C.  STATEMENTS TWELVE THROUGH FIFTEEN WERE MADE DURING AND IN FURTHERANCE OF THE CONSPIRACY.

Establishing that the proffered statements were made during and in furtherance of the conspiracy is the final hurdle that must be cleared if the United States is to admit co-conspirators' out-of-court statements under rule 801(d)(2)(E).  See United States v. Owens, 70 F.3d at 1123; Fed. R. Evid. 801(d)(2)(E).  A statement is made "in furtherance" of the conspiracy if it is "intended to promote the conspiratorial objectives."  United States v. Rutland, 705 F.3d at 1252 (quoting United States v. Townley, 472 F.3d 1267, 1273 (10th Cir. 2007).

> [E]xamples of statements the Tenth Circuit has held to be in furtherance of a conspiracy include statements explaining events of importance to the conspiracy, statements between coconspirators which provide reassurance, which serve to maintain trust and cohesiveness among them, or which inform each other of the current status of the conspiracy, statements identifying a fellow coconspirator, and discussions of future intent that set transactions to the conspiracy in motion or that maintain the flow of information among conspiracy members.

United States v. Leveille, 2023 WL 5835889, at *13.  See United States v. Williamson, 53 F.3d 53 F.3d 1500, 1520-21 (10th Cir. 1995)(holding that statements which relate to: (i) the identity and roles of co-conspirators; (ii) avoiding detection by law enforcement officers; (iii) allaying the fears and suspicions of individuals; and (iv) inducing future involvement in the conspiracy may all be in furtherance of a conspiracy).  To the contrary, "statements are not in furtherance of the conspiracy if they are mere narratives, that is statements relating to past events, even those connected with the operation of the conspiracy where the statement serves no immediate or future conspiratorial purpose."  United States v. Alcorta, 853 F.3d 1123, 1137 (10th Cir. 2017).

As an initial matter, statements twelve through fifteen were each made during the conspiracy, because they were made after the conspiracy came into existence following the initial conversation between Trujillo and Carrasco-Celis, and before the conspiracy's objectives had been

achieved or the raid on the stash house in Juarez during which the marijuana shipment was seized rendered the conspiracy's objective unachievable.  See FOF ¶ 22, at 5; United States v. Owens, 70 F.3d at 1126 ("A coconspirator statement is made during the course of the conspiracy it if is made before the objectives of the conspiracy have either failed or been achieved."); United States v. Leveille, 2023 WL 5835889, at *14 ("In a typical drug dealing conspiracy, the seizure of the suppliers, dealers, or products could terminate the conspiracy.").  Statements thirteen, fourteen, and fifteen, the exchange between Batista-Carrasco and Trujillo about where the marijuana load would enter the United States and to where it was destined, constitute "discussions of future intent that set transactions to the conspiracy in motion" and are therefore in furtherance of the conspiracy. United States v. Leveille, 2023 WL 5835889, at *13.  Finally, statement twelve, in which Batista-Carrasco rates the marijuana as a nine in quality upon its arrival in Gomez Farias, served to inform other members regarding the conspiracy's status and ensured the continued transportation of the marijuana.  See United States v. Leveille, 2023 WL 5835889, at *13.  See November Tr. at 60:15-20 (Castellano)("[F]or him to verify to the others that this is in fact a load of marijuana, is in furtherance of the conspiracy.  It helps to update and keep others apprised of the status of the conspiracy."); id. at 65:22-25 (Court)("[I]f I'm a buyer of a large quantity of drugs and I'm telling the purchaser you've got some good stuff here, I think that's probably furthering the conspiracy."). Consequentially, statements twelve through fifteen are admissible for their truth under rule 801(d)(2)(E).[4]

---

[4]In addition, the first layer of hearsay in statements ten and eleven, in which Corella-Hernandez and Ortega-Gallegos provide statements to Carrasco-Celis, qualify as co-conspirator statements.  Statement ten, in which Corella-Hernandez notifies Carrasco-Celis that he has arrived to pick up the marijuana shipment, and statement eleven, in which Ortega-Gallegos notifies Carrasco-Celis that the marijuana had arrived in Villa Ahumada, are in furtherance of the conspiracy, because they "explain[] events of importance to the conspiracy, . . . maintain the flow

## II.    <u>FINDINGS OF NON-HEARSAY UNDER RULE 801(c)</u>.

Statements one through eleven, in addition to statements thirteen and sixteen, are admissible because they are not hearsay.  "Hearsay testimony is generally inadmissible."  <u>United States v. Christy</u>, 2011 WL 5223024, at *5 (citing Fed. R. Evid. 802).  Under rule 801(c) of the Federal Rules of Evidence, "hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed. R. Evid. 801(c).  An out-of-court statement is not hearsay, however, if its significance "lies solely in the fact that it was made," because the statement's relevance to issues at trial does not depend on the underlying truth of the statement.  Fed. R. Evid. 801 Advisory Committee's Note (1972).  <u>See id.</u> ("The effect is to exclude from hearsay the entire category of 'verbal acts' and 'verbal parts of an act,' in which the statement itself affects the legal rights of the parties or is a circumstance bearing on conduct affecting their rights." (no citation given for quotation)).

Under the non-hearsay umbrella, the Tenth Circuit has acknowledged that, "in conspiracy cases . . . [s]tatements by coconspirators are commonly introduced at trial simply because the statements themselves are part of the plotting to commit a crime."  <u>United States v. Faulkner</u>, 439 F.3d at 1226.  Such statements properly are considered non-hearsay, because the "coconspirator is not asserting the truth of a historical event.  Rather, he is directing the conduct of a fellow conspirator or agreeing to follow directions."  <u>United States v. Faulkner</u>, 439 F.3d at 1226.  <u>See id.</u> at 1226-27 ("If three persons are prosecuted for conspiracy, the conversation in which they plan

_____

of information among conspiracy members, . . . [and] provide reassurance."  <u>United States v. Leveille</u>, 2023 WL 5835889, at *13.  The second layer of hearsay in these statements, wherein Carrasco-Celis communicates what Corella-Hernandez and Ortega-Gallegos told him to Vasquez, however, is not admissible as a co-conspirator statement, because the declarant is a government informant.  <u>See</u> <u>United States v. Leal</u>, 921 F.3d at 959.

- 31 -

the venture and agree to participate is not hearsay, and the words spoken by each may be proved against all . . . ." (quoting Christopher B. Mueller, The Federal Coconspirator Exception: Action, Assertion, and Hearsay, 12 Hofstra L. Rev. 323, 326 (1984))).  Similarly, courts have held that verbal efforts to purchase drugs are not hearsay, because they are not offered for their truth, but are provided to illustrate the declarants' efforts to initiate a drug deal.  See United States v. Tenerelli, 614 F.3d at 772 (holding that the statement "[s]he ordered methamphetamine" was not hearsay, because the testifying officer "testified about the fact that the order occurred, a verbal act of which [he] had personal knowledge"); United States v. Oguns, 921 F.2d at 448-49 (admitting declarant's statement, "[h]ave the apples arrived there?" where evidence established that "apples" meant drugs, as non-hearsay, because it was offered as "circumstantial evidence of [the declarant's] knowledge and intent" -- in other words "not for the truth of what was said but simply as evidence that such a statement was made").

Similarly, questions and commands are often, but not always, non-hearsay.  See, e.g., United States v. Summers, 414 F.3d at 1300 (recognizing "that a declaration in the form of a question" ordinarily will be non-hearsay); United States v. Diaz, 670 F.3d at 346 ("Out-of-court statements providing directions from one individual to another do not constitute hearsay."). "Because there may be instances where a party attempts to admit hearsay by cloaking statements under the guise of a question," however, questions and commands may constitute hearsay, "the focus of the inquiry should be on what the declarant intended to say, whether implied or directly asserted." U.S. v. Torres, 794 F.3d at 1061.  See United States v. Summers, 414 F.3d at 1300. The Tenth Circuit has cautioned trial courts against allowing the unfettered use of non-hearsay to provide background information regarding an investigation "if the statements present too great a danger of prejudice." See United States v. Cass, 127 F.3d at 1223; United States v. Freeman, 816

F.2d at 563 ("[O]ut-of-court statements by informants offered to explain the background of an investigation, like all evidence, must be evaluated under the criteria in Fed. R. Evid. Rules 401 and 403 for relevance and to prevent confusion or prejudice on the part of the jury.").  Where a statement is disguised as "background" actually "bear[s] on the ultimate issue," courts must consider the prejudice that would result if the jury considered the statement for its truth.  United States v. Hinson, 585 F.3d at 1337.

Here, statements one and two, encompassing Carrasco-Celis' order of marijuana and Trujillo's authorization of the order, are not hearsay, because the statements are verbal acts whose significance is that the order and authorization occurred.  See United States v. Roach, 164 F.3d 403, 410 (8th Cir. 1998)("[T]estimony that [a person] had asked her to sell drugs involved a verbal act; the government offered the statement not to prove its truth, but that it had been made."); United States v. Lim, 984 F.2d 331, 336 (9th Cir. 1993)(holding that a conversation in which "Alex asked Apostol to transport 'shabu' to Chicago for him for which Alex would pay Apostol $500" was not hearsay but, rather, "verbal acts admissible to show that a conspiratorial agreement existed between Alex and Apostol for the illegal transportation of drugs" (no citation given for quotation)); United States v. Tenerelli, 614 F.3d at 772 ("We agree with the district court that Deputy Wood's statements regarding what he observed during the controlled buy are not hearsay; no statements of the CRI were offered for the underlying truth. Instead, Deputy Wood testified about the fact that the order occurred, a verbal act of which Deputy Wood had personal knowledge.").  Statement three and thirteen, Trujillo's questions about where the marijuana was going and where it would cross into the United States, do not constitute hearsay, because the statements were not "an intended assertion, either express or implied."  United States v. Jackson, 88 F.3d 845, 848 (10th Cir. 1996).  Although the Court recognizes that questions may still constitute hearsay, see U.S. v.

Torres, 794 F.3d at 1061, the Court concludes that Trujillo did not intend to assert any implicit message with his questions; rather, his aim was to discover to where the marijuana would be shipped, see United States v. Cesareo-Ayala, 576 F.3d 1120, 1128-29 (10th Cir. 2009)("Statements 1 and 4(a) are questions that assert nothing, again not hearsay.").

Statement four is not offered for its truth, because the marijuana was never intended to be delivered to Albuquerque.  See October Tr. at 68:9-10 (Castellano); United States v. Cesareo-Ayala, 576 F.3d at 1129 (concluding that certain statements "were not hearsay because they were not offered for their truth; indeed, they were demonstrably false"); United States v. Lewis, 594 F.3d 1270, 1284 (10th Cir. 2010)("[T]he government's theory in offering the testimony was that Lewis's statements were in fact untrue.").  Trujillo's confirmation that Carrasco-Celis could get 600 kilograms of marijuana for $50,000 in statement five, is a verbal act and not hearsay.  See United States v. Aysheh, No. CR 17-370, 2023 WL 3855844, at *2 (D.N.M. June 6, 2023)(Herrera, J.)("[T]he Defendants' offers to sell certain items at certain prices are not hearsay, they are verbal acts whose significance is solely that they were made.").  Statement seven and nine, in which the parties agreed on the path that the marijuana would take during transport, are not hearsay, because these statements are not offered to establish the route the marijuana took, but to show the agreement between Carrasco-Celis and Trujillo and Carrasco-Celis and Corrella-Hernandez respectively.  See United States v. Faulkner, 439 F.3d at 1226 (admitting co-conspirator statements, "because the statements themselves are part of the plotting to commit a crime"); United States v. Lim, 984 F.2d at 336 (concluding that a statement in which one co-conspirator "agreed to give [a different co-conspirator] a $300 advance" was not hearsay).  Cf. United States v. Calaway, 524 F.2d 609, 613 (9th Cir. 1975)("[W]e treat testimony by witnesses about statements made by Gelfuso or Milano themselves as part of the independent evidence of their participation

in the conspiracy. Such statements by them are not received to establish the truth of what they said, but to show their own verbal acts.").

Statement eight is a command to wire some of the payment for the marijuana up front, whereas statement sixteen is a direction to deliver trucks as collateral, and both are not intended to make an implicit assertion. See United States v. Faulkner, 439 F.3d at 1226 ("The coconspirator is not asserting the truth of a historical event[, because] he is directing the conduct of a fellow conspirator . . . ."); United States v. Dawkins, 999 F.3d 767, 789 (2d Cir. 2021)("The statement '[d]o not accept money from these people' was an order, i.e., an imperative rather than a declarative statement, and it was offered not for its truth, but for the fact that it was said. It was therefore not hearsay." (quoting record on appeal)). Finally, the United States argues that Carrasco-Celis' conveyance of information to Vasquez -- the second layers of hearsay in statements ten and eleven statement -- are offered for a non-truth purpose: to show the statement's effect on Vasquez. November Tr. at 33:4-5 (Castellano). "Statements offered for the effect on the listener . . . are generally not hearsay." Faulkner v. Super Valu Stores, Inc., 3 F.3d 1419, 1434 (10th Cir. 1993). The Court will, therefore, allow the admission of statements ten and eleven for the purpose of demonstrating how the statements led Vasquez to expect Corella-Hernandez' imminent arrival and the arrival of the marijuana shipment arrived in Villa Ahumada, but not for the statements' truth -- i.e., that Corella-Hernandez was actually in town to pick up the marijuana and that the marijuana had arrived. See Altamirano v. Chem. Safety & Hazard Investigation Bd., 41 F. Supp. 3d 982, 993 (D. Colo. 2014)(Brimmer, J.)("This document is admissible to show Mr. Bresland's state of mind at the time he made his decision.").

The concerns raised by the Tenth Circuit in United States v. Cass, 127 F.3d 1218, are not present in regard to these statements because the United States has not attempted to disguise any

statements -- none of which were made by law enforcement -- as "background" information about the FBI's investigation.  127 F.3d at 1222.  See United States v. Leveille, 2023 WL 5835889, at *4 ("Additionally, Freeman, Cass, and Hinson all dealt with law enforcement overstepping the bounds of providing 'background' information. There is no such issue here.").  Even if this concern was raised, the Court concludes that the rule 403 balancing favors admission because the probative value of the statements is not substantially outweighed by the danger of unfair prejudice.  See Fed. R. Evid. 403; United States v. Leveille, 2023 WL 5835889, at *4 ("[T]he non-hearsay evidence is not "extensive and prejudicial . . . ." (quoting United States v. Cass, 127 F.3d at 1222-23).  Cf. United States v. Lewis, 594 F.3d 1270, 1284 (10th Cir. 2010)("It is irrelevant that Lewis's statements to Markham were used substantively -- as evidence that Markham was defrauded.  The hearsay rule does not preclude an out-of-court statement from being used substantively so long as it is not being used to prove the truth of the matter asserted by the declarant.").  In sum, statements one through eleven, in addition to statements thirteen and sixteen, are admissible because they are not hearsay.[5]

## III.     STATEMENTS ADMISSIBLE UNDER RULE 803(3).

Statements one and five are admissible under rule 803(3).  Rule 803(3) provides an exception to the hearsay rule permitting admission of statements "of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health) . . . ."  Fed. R. Evid. 803(3).   Rule 803(3) "expressly

---

[5]Where there is concern that the jury may rely upon a statement for its truth -- for example, taking statement four as evidence that Trujillo knew the marijuana would be shipped to the United States, see October Tr. at 70:7-20 (Johnson) -- Quintana may request a limiting instruction, see October Tr. at 70:21-71:1 (Court); United States v. DeLeon, 2021 WL 4171506 at *6 (giving a limiting instruction where a co-conspirator statement was "not offered to prove the truth of the matter asserted").

excludes from the exception," however, "'a statement of memory or belief to prove the fact remembered or believed.'"  McInnis v. Fairfield Communities, Inc., 458 F.3d 1129, 1143 (10th Cir. 2006)(quoting Fed. R. Evid. 803(3)).  Under rule 803(3), a declarant's out-of-court statement of intent may be introduced to prove that the declarant acted in accordance with that intent.  See Mutual Life Insurance Co. v. Hillmon, 145 U.S. 285, 295-96 (1892).  "[S]tatements relating to a person's state of mind have probative value mainly because the declarant has no chance to reflect upon and perhaps misrepresent his situation."  United States v. Rodriguez-Pando, 841 F.2d 1014, 1019 (10th Cir. 1988).  Accordingly, "[a] key circumstantial guarantee of trustworthiness in respect to Rule 803(3) is that it requires that the statement be contemporaneous with the declarant's 'then existing' state of mind, emotion, sensation, or physical condition."  United States v. Naiden, 424 F.3d 718, 722 (8th Cir. 2005)(quoting Fed. R. Evid. 803(3)).

The United States contends that statements one and two are admissible as statements of Carrasco-Celis' and Trujillo's then-existing state of mind under rule 803(3).  See October Tr. at 38:23-392 (Court, Castellano); id. at 53:18-21 (Court, Castellano).  Statement one is admissible under rule 803(3), because it is a statement of Carrasco-Celis' then-existing state of mind, namely his desire and intent to order marijuana.  See United States v. DeLeon, 2021 WL 4171506, at *6 (admitting a declarant's statement that he "wanted knowledge of the plan kept to very few individuals" as a statement of the declarant's then-existing state of mind); Phoenix Mut. Life Ins. Co. v. Adams, 30 F.3d 554, 567 (4th Cir. 1994)("The district court also held correctly that the note's implicit statement that Bill indicated a desire to change beneficiaries was admissible pursuant to 803(3).").  Statement two, on the other hand, in which Trujillo authorizes the marijuana load, does not describe Trujillo's mental, emotional, or physical state at the time he made the statement, and is, therefore, not admissible under rule 803(3).  Statement five is admissible under

803(3), because it is a statement of Trujillo's then-existing emotional state, namely his pleasure that Carrasco-Celis is ordering marijuana again.  See United States v. Chaco, No. CR 10-3463, 2011 WL 3503333, at *2 (D.N.M. August 6, 2011)(Browning, J.)("Her declaration of sadness is a statement relating to her then existing state of mind and emotion.").

Statements ten and eleven constitute double hearsay, because the initial statement was conveyed to Carrasco-Celis who then conveyed the statements to Vasquez, who will testify about the statements at trial, shortly thereafter.  See November Tr. at 37:25-38:1 (Acee)("I believe it's communicated to [Vasquez] from [Carrasco-Celis]."); Fed. R. Evid. 805.  The Court concludes in Section I(C), infra at 30 n.4, that the first layer of hearsay in statements ten and eleven, in which Corrella-Hernandez and Ortega-Gallegos convey the statements to Carrasco-Celis, are co-conspirator statements admissible under rule 801(d)(2)(E).  The United States argues that the second layers of hearsay in statements ten and eleven -- i.e. Carrasco-Celis' communication of the statements to Vasquez -- are both admissible under the state of mind exception.  See November Tr. at 32:13-15 (Castellano); id. at 39:11-13 (Castellano).  The United States argues that statement ten is admissible as a statement of Carrasco-Celis' "state of mind that he expects . . . Corella-Hernandez to show up at his house to pick up the drugs."  November Tr. at 32:13-15 (Castellano). Cast in this light, however, the statement is no more than a statement of Carrasco-Celis' belief that Corella-Hernandez would be picking up the marijuana, and rule 803(3) prohibits the admission of "a statement of . . . belief to prove the fact . . . believed . . . ."  Fed. R. Evid. 803(3).  See United States v. Smallwood, 299 F. Supp. 2d 578, 586 (E.D. Va. 2004)(Ellis, J.)(holding that the declarant's statement that he "was going to die on the day of his murder . . . reflects his opinion or belief about future events; it does not bear on his existing state of mind and thus does not fall within the Rule 803(3) exception").

- 38 -

The United States' argument that statement eleven is admissible as a statement of Carrasco-Celis' "state of mind that the load continued and had arrived at its destination" is similarly unavailing.  November Tr. at 39:11-13 (Castellano).  Again, the only way by which this statement could fit under rule 803(3) is if it was amended to state: "I believe the load has continued and has arrived at its destination."  As with statement ten, rule 803(3) does not permit the Court to admit Carrasco-Celis' statement about his belief that an event occurred to prove that the event occurred; if the Court were to agree with the United States' theory, the ruling would result in the state-of-mind exception swallowing the hearsay rule.  If a party could admit, pursuant to rule 803(3), any statement, by representing that the declarant framed his or her statement as his or her belief or expectation regarding what was happening or would be happening in the world, the rule against hearsay would have little force.  The advisory committee recognizes as much when it states

> The exclusion of "statements of memory or belief to prove the fact remembered or believed" is necessary to avoid the virtual destruction of the hearsay rule which would otherwise result from allowing state of mind, provable by a hearsay statement, to serve as the basis for an inference of the happening of the event which produced the state of mind.

Fed. R. Evid. 803(3), advisory committee's note.  Accordingly, statements ten and eleven are not admissible under rule 803(3).

## IV.    STATEMENTS ADMISSIBLE UNDER RULE 804(b)(3).

Statements two, three, five, seven, eight, and thirteen are admissible under rule 804(b)(3). The statement-against-penal-interest exception applies when: (i) "the declarant is unavailable"; and (ii) "a reasonable person in the declarant's position would not have made the statement unless she believed it to be true because, when made, it exposed the declarant to criminal liability." United States v. Hammers, 942 F.3d 1001, 1010 (10th Cir. 2019).  A statement need not subject the declarant to "immediate criminal prosecution," United States v. Lang, 589 F.2d 92, 97 (2d Cir.

1978); rather, it must only "tend[] to subject the declarant to . . . criminal liability," Fed. R. Evid. 804(b)(3)(A). Whether a statement is sufficiently against a declarant's penal interest depends not only on the "contextual wording of the statement itself but also on the circumstances under which it was made." United States v. Smalls, 605 F.3d at 782. In a criminal case, the statement additionally must be "supported by corroborating circumstances that clearly indicate its trustworthiness." Fed. R. Evid. 804(b)(3)(B). Although the Tenth Circuit has not "squarely addressed how a statement must be corroborated," it has held that "the declarant's credibility and the circumstances of the statement bearing on its truthfulness can both be considerations." United States v. Lozado, 776 F.3d at 1128.[6]

As an initial matter, Trujillo, the declarant for the statements that the United States seeks to admit, is unavailable to testify at trial pursuant to rule 804(a)(5), because the United States has been unable to apprehend Trujillo, despite an outstanding warrant for his arrest. See Arrest Warrant, filed July 23, 2015 (Doc. 155); United States v. Ochoa, 229 F.3d 631, 635 (7th Cir. 2000)(concluding that a witness was unavailable where the United States "obtained a material witness arrest warrant," but were unsuccessful in locating the defendant); United States v. Aispuro-Angulo, 986 F.2d 1430, 1993 WL 26643, *2 (10th Cir. 1993)(unpublished table opinion)("Because Mr. Mejia-Gonzales was a fugitive at the time of the trial, he was clearly unavailable.").[7] In

---

[6]At the James hearings, Quintana argued that certain statements could not be statements against penal interest because the declarants are not "standing trial in this case." October Tr. at 81:5-11 (Johnson). Rule 804(b)(3)'s text, however, forecloses this argument. To qualify as a statement against penal interest, a statement need only "tend[]" to subject a declarant to criminal liability such that a reasonable person would make the statement only if it were true. Fed. R. Evid. 804(b)(3).

[7]The United States indicated that certain statements made by Batista-Carrasco qualify as statements against interest. See, e.g., November Tr. at 61:6-7 (Castellano)(expressing that statement twelve was admissible as a statement against interest). The United States indicated,

addition, statements two, three, seven, eight, and thirteen are sufficiently "self-inculpatory," because, by authorizing large-volume purchases of marijuana, requesting money for the marijuana be wired to Trujillo, and coordinating the marijuana's shipment and delivery, the statements tend to expose Trujillo to criminal liability.  United States v. Hammers, 942 F.3d at 1010.  See Fed. R. Evid. 804(b)(3)(A); United States v. Taggart, 944 F.2d 837, 840 (11th Cir. 1991)("Woods's statement was sufficiently against his penal interest because it implicated him in a marijuana transaction."); United States v. Aispuro-Angulo, 1993 WL 26643, at *2 ("Mr. Mejia-Gonazles' statements tend to implicate him in a drug transaction and to expose him to criminal liability."). Nothing about statement five, which the United States clarified is simply "600 kilograms,"  Tr. at 72:9-73:6 (Court, Castellano), is self-inculpatory on its face.  The "circumstances under which" the statement was made, United States v. Smalls, 605 F.3d at 782, however -- i.e., an indication of how much marijuana Carrasco-Celis could purchase for $50,000.00 -- make clear that a reasonable person in Trujillo's position would not have indicated the quantity of marijuana a potential buyer could buy unless he or she believed the statement to be true.  See Williamson v. United States, 512 U.S. 594, 603-04 (1994)("[W]hether the statement was sufficiently against the declarant's penal interest . . . can only be answered in light of all the surrounding circumstances."); id. at 603 ("[S]tatements that are on their face neutral may actually be against the declarant's interest . . . 'Sam and I went to Joe's house' might be against the declarant's interest if a reasonable person in the declarant's shoes would realize that being linked to Joe and Sam would implicate the declarant in Joe and Sam's conspiracy." (no citation given for quotation)).

Finally, the statements are sufficiently corroborated.  First, evidence demonstrating that the

however, that Batista-Carrasco will testify at trial, and, therefore, Batista-Carrasco is not unavailable.  See November Tr. at 45:14-17 (Acee, Castellano); id. at 59:12-14 (Court).

marijuana was subsequently delivered as ordered to Gomez Farias corroborates Trujillo's statements authorizing the order of marijuana, indicating the amount of marijuana that could be ordered, and acquiescing to the marijuana's delivery to Gomez Ferias.  See United States v. Henderson, 736 F.3d 1128, 1131 (7th Cir. 2013)(holding that "corroboration of the content of the hearsay statement may indicate that the statement is trustworthy").  In addition, Trujillo made these statements "spontaneously" to individuals whom he believed were co-conspirators and thus had "no reason to lie." United States v. Salvador, 820 F.2d 558, 562 (2d Cir. 1987).  See United States v. Garcia, 986 F.2d 1135, 1140 (7th Cir. 1993)(identifying that a lack of "evidence that [the declarant's] statement was made in order to curry favor with authorities . . . supported the trustworthiness of the testimony").  Moreover, there is no indication of a "close relationship between the declarant[, Trujillo,] and the defendant[, Quintana]" which could "damage the trustworthiness of a statement." United States v. Lozado, 776 F.3d at 1133.  See United States v. Garcia, 986 F.2d at 1140 ("[I]f the two involved parties do not have a close relationship, one important corroborating circumstance exists.").  Accordingly, statements two, three, five, seven, eight, and thirteen are admissible under rule 804(b)(3) as statements against the declarant's penal interest.

## V.   STATEMENTS MADE BY CARRASCO-CELIS ARE NOT ADMISSIBLE UNDER RULE 804(b)(6).

Rule 804(b)(6) excludes from the definition of hearsay statements that are "offered against a party that wrongfully caused -- or acquiesced in wrongfully causing -- the declarant's unavailability as a witness, and did so intending that result." Fed. R. Evid. 804(b)(6).  To find that the forfeiture-by-wrongdoing exception applies, "the district court must find, by the preponderance of the evidence that (1) the defendant engaged or acquiesced in wrongdoing (2) that was intended

to render the declarant unavailable as a witness and (3) that did, in fact, render the declarant unavailable as a witness." United States v. Gray, 405 F.3d 227, 241 (4th Cir. 2005). For rule 804(b)(6) purposes, wrongful actions of a defendant's co-conspirators may be imputed to the defendant. See United States v. Cherry, 217 F.3d at 820 (holding that a defendant waives his or her "hearsay objections" where "the wrongful procurement was in furtherance, within the scope, and reasonably foreseeable as a necessary or natural consequence of an ongoing conspiracy").

The United States argued that the out-of-court statements made by Carrasco-Celis are admissible against Quintana under rule 804(b)(6), because Quintana participated in Carrasco-Celis' kidnapping and disappearance, thereby preventing him from acting as a witness at trial. See November Tr. at 103:20-129:15 (Court, Acee, Castellano, Johnson). The United States averred that it would provide evidence at trial in the form of testimony from Carrasco-Celis' nieces that they witnessed a "a large group of men" take Carrasco-Celis from his home and that Quintana was present at the time of the kidnapping. November Tr. at 104:7-18 (Acee). See FOF ¶¶ 23-25, at 6. The Court concludes that the United States has not presented sufficient evidence that Quintana caused or acquiesced in causing Carrasco-Celis' unavailability with the intention that Carrasco-Celis be unavailable as a witness.

As an initial matter, it is undisputed that Carrasco-Celis has been rendered unavailable to testify. See FOF ¶ 25, at 6; Objections at 3 (indicating that Carrasco-Celis is "presumed dead"). The evidence does not demonstrate, however, that Quintana caused or acquiesced in causing Carrasco-Celis' availability. The only evidence that the United States provides regarding Quintana's involvement in Carrasco-Celis' disappearance is that he was present at the time Carrasco-Celis was taken from his home. See November Tr. at 104:15-18 (Acee). Despite that only tacit assent to procure a potential witness' unavailability may be sufficient to find that a

defendant acquiesced to the wrongdoing, see United States v. Rivera, 412 F.3d 562, 567 (4th Cir. 2005), the Court concludes that a mere allegation of Quintana's presence is insufficient, cf. Olson v. Green, 668 F.2d 421, 429 n.14 (8th Cir. 1982)(declining to find that the defendant procured a witness' unavailability through threats where "[t]he only independent evidence linking Olson to Link's fear of testifying came from [a detective's testimony] that when plain clothes officers arrested Link . . . she stated that she first thought the officers were Olson or some of his friends coming to kill her").  Where courts have admitted out-of-court statements under rule 804(b)(6), they have relied on substantially more evidence of a party's wrongdoing or acquiescence to wrongdoing.  See, e.g., United States v. Balano, 618 F.2d 624, 629-30 (10th Cir. 1979)(concluding that the defendant caused a witnesses unavailability on the basis of numerous threats the defendant made to the witness including "a phone call to the effect that 'if anybody testified in the matter[,] . . . they could be killed'" (citing the record)), overruled on other grounds by Richardson v. United States, 468 U.S. 317, 325-26 (1984); United States v. Rivera, 412 F.3d at 567 n.4 ("There was substantial evidence, in the form of recorded interviews, telephone conversations, and letters, from which the district judge could have concluded that Rivera played an affirmative role in deciding that Paz should be murdered.").

Furthermore, even if the United States was able to demonstrate sufficiently that Quintana participated in or acquiesced to Carrasco-Celis' kidnapping, the evidence does not establish that Quintana's procurement of Carrasco-Celis' unavailability was "designed to prevent [him] from testifying." Giles v. California, 554 U.S. 353, 359 (2008).  Preventing a defendant from testifying need not be the only reason motivating a defendant's wrongful actions, see United States v. Houlihan, 92 F.3d 1271, 1279 (1st Cir. 1996)("[I]t is sufficient in this regard to show that the evildoer was motivated in part by a desire to silence the witness; the intent to deprive the

prosecution of testimony need not be the actor's sole motivation."), but the United States has not presented any evidence that Quintana intended at all to prevent Carrasco-Celis, as a potential witness, from testifying at a future trial or assisting in an ongoing criminal investigation. Rather, Acee testified that Carrasco-Celis was meeting with representatives of the Sinaloa cartel, indicating a separate potential reason for Carrasco-Celis' disappearance. See FOF ¶ 26, at 6.

In contrast to the paucity of evidence that the United States presents in this case, the United States Court of Appeals for the First Circuit in United States v. Houlihan admitted statements under rule 804(b)(6) only after it determined that the "record amply demonstrates" that the defendants "knew . . . that they were depriving the government of a potential witness" when they murdered that potential witness. 92 F.3d at 1280. Specifically, the First Circuit points to the fact that one of the defendants had stated "flat out" that the potential witness "had been killed because he 'was talking to the cops.'" United States v. Houlihan, 92 F.3d at 1281 n.4 (quoting the record). Finally, the United States acknowledged at the November 3, 2023, hearing that the record did not sufficiently provide for a conclusion that Quintana had any such intent. See November Tr. at 129:6-14 (Court, Castellano)(acknowledging that the evidence likely does not establish Quintana's intent). In sum, the Court concludes that the United States has not made a sufficient "showing that the defendant intended to prevent a witness from testifying." Giles v. California, 554 U.S. at 361. Accordingly, the Court declines to admit statements that Carrasco-Celis made under rule 804(b)(6).

## VI.   THE CONFRONTATION CLAUSE DOES NOT BAR ANY STATEMENTS' ADMISSION, BECAUSE THE PROFFERED STATEMENTS ARE EITHER NON-TESTIMONIAL OR NON-HEARSAY.

The Sixth Amendment's Confrontation Clause bars from admission an absent witness' testimonial hearsay statements, unless the defendant has had a prior opportunity to cross-examine

that witness.  Crawford v. Washington, 541 U.S. at 59.  A statement is considered testimonial if its "primary purpose" is "to establish or prove past events potentially relevant to later criminal prosecution."  Davis v. Washington, 547 U.S at 822.  See United States v. Smalls, 605 F.3d at 778 ("A formal statement is testimonial if a reasonable person in the position of the declarant would objectively foresee that the primary purpose of the statement was for use in the investigation or prosecution of a crime.").  Courts commonly conclude that statements made by confidential informants are testimonial.  See United States v. Lopez-Medina, 596 F.3d 716, 731 (10th Cir. 2010)("A confidential informant's statements to a law enforcement officer are clearly testimonial."); United States v. Deitz, 577 F.3d 672, 683-84 (6th Cir. 2009)("We have held that statements by a confidential informant are 'testimonial' and thus, subject to the Confrontation Clause." (quoting United States v. Cromer, 389 F.3d 662, 675-76 (6th Cir. 2004))).  Nevertheless, "[b]ecause the scope of the Confrontation Clause is generally limited to testimonial hearsay, the Clause 'does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.'"  United States v. Ibarra-Diaz, 805 F.3d 908, 918 (10th Cir. 2015)(quoting Crawford v. Washington, 541 U.S. at 59 n.9).

Statements made by declarants other than Carrasco-Celis are not testimonial, because there is no indication that the individuals who made the statements "would objectively foresee that the primary purpose of the statement was for use in the investigation or prosecution of a crime." United States v. Smalls, 605 F.3d at 778.  In addition, many of the statements made by declarants other than Carrasco-Celis are co-conspirator statements, and, accordingly, the Confrontation Clause does not bar them.  See United States v. Ciresi, 697 F.3d 19, 31 (1st Cir. 2012)("[C]oconspirator statements such as Zambarano's are, by their nature, not testimonial."); United States v. Ramirez, 479 F.3d 1229, 1249 (10th Cir. 2007).  Carrasco-Celis made his

statements -- statements one, four, nine, and sixteen, in addition to the part of statements ten and eleven in which Carrasco-Celis relayed information to Vasquez -- pursuant to the direction of Acee while acting as a government informant in an effort to further the FBI's investigation into the VCFO.  The statements were, therefore, "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Crawford v. Washington, 541 U.S. at 59.  See United States v. Cromer, 389 F.3d 662, 675 (6th Cir. 2004)("[S]tatements of a confidential informant are testimonial.").   Carrasco-Celis' statements were translated in real time to Acee, and Carrasco-Celis was aware that law enforcement was listening in to his statements as he made them.  See October Tr. at 34:23-36:6 (Acee).  Nevertheless, the statements made by Carrasco-Celis are not hearsay, see Section II, supra at 30-36, and therefore do not present Confrontation Clause issues, Crawford v. Washington, 541 U.S. at 60 n. 9 ("The Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."); United States v. Ibarra-Diaz, 805 F.3d 908, 919-20 (10th Cir. 2015)(concluding that, if a statement "communicate[s] no hearsay, it is generally of no concern to the Confrontation Clause").

In sum, the sixteen statements the United States offers are admissible.  The Court provides the following table:

| James Proffered Statement | Ruling |
|---|---|
| Statement 1: Vasquez and Carrasco-Celis called to order a load of marijuana from Trujillo.  Declarant: Vasquez and/or Carrasco-Celis  Date: Between March 12-16, 2011 | This statement is admissible for its truth, because it is not hearsay.  See Fed. R. Evid. 801(c). |

| | |
|---|---|
| Source: Vasquez | |
| Statement 2: Trujillo authorized the purchase of the load of marijuana by Vasquez and Oscar Carrasco-Celis.<br><br>Declarant: Trujillo<br><br>Date: Between March 12-16, 2011<br><br>Source: Vasquez | This statement is admissible for its truth, because it is not hearsay, see Fed. R. Evid. 801(c), and because it is a statement against Trujillo's penal interest, see Fed. R. Evid. 804(b)(3). |
| Statement 3: "Where was the load of marijuana going?"<br><br>Declarant: Trujillo<br><br>Date: Between March 12-16, 2011<br><br>Source: Vasquez | This statement is admissible for its truth, because it is not hearsay, see Fed. R. Evid. 801(c), and because it is a statement against Trujillo's penal interest, see Fed. R. Evid. 804(b)(3). |
| Statement 4: The load of Marijuana was going to Albuquerque.<br><br>Declarant: Vasquez and/or Carrasco-Celis<br><br>Date: Between March 12-16, 2011<br><br>Source: Vasquez | This statement is admissible for its truth, because it is not hearsay.  See Fed. R. Evid. 801(c). |
| Statement 5: 600 kilograms[8]<br><br>Declarant: Trujillo<br><br>Date: Between March 12-16, 2011<br><br>Source: Vasquez | This statement, as amended at the James hearings, is admissible for its truth, because it is not hearsay, see Fed. R. Evid. 801(c), and because it is a statement against Trujillo's penal interest, see Fed. R. Evid. 804(b)(3). |
| Statement 6: Trujillo expressed his pleasure | This statement is a statement of Trujillo's then- |

---

[8]The United States changed statement five at the James hearings from "Trujillo set the price for the load of marijuana at $50,000" to "600 kilograms."  See October Tr. at 72:9-73:6 (Court, Castellano).  The United States explained that Trujillo "didn't actually set price[,] he was given the dollar amount[,] and then he said how much drug[s] he could deliver for that price."  October Tr. at 72:21-23 (Castellano).

| | |
|---|---|
| that Carrasco-Celis was ordering marijuana again after Carrasco-Celis was away for a few months.<br><br>Declarant: Trujillo<br><br>Date: Between March 12-16, 2011<br><br>Source: Vasquez | existing state of mind, specifically his emotion, so it is admissible for its truth under rule 803(3). |
| Statement 7: Trujillo and Carrasco-Celis agreed that the marijuana would first be delivered to Gomez Farias.<br><br>Declarant: Trujillo<br><br>Date: Between March 12-16, 2011<br><br>Source: Vasquez | This statement is admissible for its truth, because it is not hearsay, see Fed. R. Evid. 801(c), and because it is a statement against Trujillo's penal interest, see Fed. R. Evid. 804(b)(3). |
| Statement 8: Trujillo requested that at least some of the money for the marijuana load be wired to him.<br><br>Declarant: Trujillo<br><br>Date: Between March 12-16, 2011<br><br>Source: Vasquez | This statement is admissible for its truth, because it is not hearsay, see Fed. R. Evid. 801(c), and because it is a statement against Trujillo's penal interest, see Fed. R. Evid. 804(b)(3). |
| Statement 9: Vasquez and/or Carrasco-Celis communicated with Corrella-Hernandez to coordinate the movement of the marijuana load from Gomez Farias to Villa Ahumada and Corrella-Hernandez acknowledged that "he would be the person picking up the marijuana . . . ." November Tr. at 21:5-17 (Acee, Johnson).<br><br>Declarant: Vasquez and/or Carrasco-Celis<br><br>Date: March 21, 2011<br><br>Source: Vasquez | This statement is admissible for its truth, because it is not hearsay, see Fed. R. Evid. 801(c), and, regarding the portion of the statement in which Corrella-Hernandez acknowledges that he will pick up the marijuana, as a statement against Corrella-Hernandez' penal interest, see Fed. R. Evid. 804(b)(3), and as a co-conspirator statement under rule 801(d)(2)(E). |

| | |
|---|---|
| Statement 10: Corrella-Hernandez notified Carrasco-Celis that he was in town to pick up their marijuana load to transport it to Villa Ahumada, and Carrasco-Celis later conveyed the statement to Vasquez.<br><br>Declarant: Corrella-Hernandez<br><br>Date: March 23, 2011<br><br>Source: Vasquez | This statement is double hearsay. The first layer of hearsay is admissible as a statement against Corrella-Hernandez' penal interest, see Fed. R. Evid. 804(b)(3), and as a co-conspirator statement under rule 801(d)(2)(E). The second layer of hearsay is admissible to show the effect the statement had on Vasquez. See see Fed. R. Evid. 801(c); Faulkner v. Super Valu Stores, Inc., 3 F.3d at 1434. |
| Statement 11: Ortega-Gallegos called Vasquez and/or Carrasco-Celis to inform them that the marijuana load arrived in Villa Ahumada, and Carrasco-Celis later conveyed the statement to Vasquez.<br><br>Declarant: Ortega-Gallegos<br><br>Date: March 23, 2011<br><br>Source: Vasquez | This statement is double hearsay. The first layer of hearsay is admissible as a statement against Ortega-Gallegos' penal interest, see Fed. R. Evid. 804(b)(3), and as a co-conspirator statement under rule 801(d)(2)(E). The second layer of hearsay is admissible to show the effect the statement had on Vasquez. See Fed. R. Evid. 801(c); Faulkner v. Super Valu Stores, Inc., 3 F.3d at 1434. |
| Statement 12: Batista-Carrasco inspected the marijuana load when it arrived at Gomez Farias and informed others that he rated it as a nine (high quality).<br><br>Declarant: Batista-Carrasco<br><br>Date: March 19, 2011<br><br>Source: Batista-Carrasco | This statement is admissible for its truth as a co-conspirator statement under rule 801(d)(2)(E). |
| Statement 13: Trujillo asked where the drugs would be crossed into the United States.<br><br>Declarant: Trujillo<br><br>Date: Between March 12 and March 16, 2011<br><br>Source: Batista-Carrasco | This statement is admissible for its truth, because it is not hearsay, see Fed. R. Evid. 801(c), because it is a statement against Trujillo's penal interest, see Fed. R. Evid. 804(b)(3), and as a co-conspirator statement under rule 801(d)(2)(E). |

| | |
|---|---|
| Statement 14: Batista-Carrasco told Trujillo that the marijuana load would be crossed into the United States through the Santa Teresa Port of Entry.<br><br>Declarant: Batista-Carrasco<br><br>Date: Between March 12 and March 16, 2011<br><br>Source: Batista-Carrasco | This statement is admissible for its truth as a co-conspirator statement under rule 801(d)(2)(E). |
| Statement 15: Batista-Carrasco told Trujillo that the marijuana load was destined for Albuquerque, New Mexico.<br><br>Declarant: Batista-Carrasco<br><br>Date: Between March 12 and March 16, 2011<br><br>Source: Batista-Carrasco | This statement is admissible for its truth as a co-conspirator statement under rule 801(d)(2)(E). |
| Statement 16: Carrasco-Celis told Batista-Carrasco to deliver two trucks to Trujillo.[9]<br><br>Declarant: Carrasco-Celis<br><br>Date: Between March 12 and March 16, 2011<br><br>Source: Batista-Carrasco | This statement, as amended at the James hearings, is admissible for its truth, because it is not hearsay.  See Fed. R. Evid. 801(c). |

**IT IS ORDERED** that the Defendant Carlos Arturo Quintana's Objections to the Government's Proposed Co-Conspirator Statements, filed August 29, 2023 (Doc. 368), are overruled.

---

[9]The United States agrees to change Statement sixteen from "Carrasco-Celis told Batista-Carrasco to deliver two trucks to Trujillo as collateral for the money that was owed for the marijuana load," to "Carrasco-Celis told Batista-Carrasco to deliver two trucks to Trujillo."  See November Tr. at 98:13-99:10 (Court, Castellano).

UNITED STATES DISTRICT JUDGE

*Counsel:*

Alexander M.M. Uballez
  United States Attorney
Maria Y. Armijo
Randy M. Castellano
  Assistant United States Attorneys
United States Attorney's Office
Las Cruces, New Mexico

     *Attorneys for the Plaintiff*

Erlinda O. Johnson
Adrian Gandara
Law Office of Erlinda Ocampo Johnson, LLC
Albuquerque, New Mexico

     *Attorneys for Defendant Carlos Arturo Quintana*

Liane E. Kerr
Albuquerque, New Mexico

     *Attorney for Defendant Jesus Isaac Rodriguez-Contreras*

Donald Kochersberger
Business Law Southwest LLC
Albuquerque, New Mexico

     *Attorney for Defendant Claudio Rene Rojo-Nevarez*

Brian A. Pori
Albuquerque, New Mexico

     *Attorney for Defendant Ernesto Rodriguez*

Gregory M. Acton
Acton Law Office, PC
Albuquerque, New Mexico

     *Attorney for Defendant Guillermo Castillo-Rubio*